**MARYLAND AMERICAN GENERAL INSURANCE COMPANY, Appellant,**

v.

**FIRST STATE BANK OF BISHOP, Texas, Appellee.**

**No. 857.**

Court of Civil Appeals of Texas, Corpus Christi.

Oct. 10, 1974.

Rehearing Denied Nov. 7, 1974.

Richard A. Hall, Branscomb, Gary, Thomasson & Hall, Corpus Christi, Hawthorne Phillips, Phillips & Norris, Austin, for appellant.

William H. Keys, Keys, Russell, Watson & Seaman, Corpus Christi, for appellee.

OPINION

YOUNG, Justice.

This is a summary judgment case. This suit arose from a bank's loss resulting from checks written by a customer who had insufficient funds on deposit. The First State Bank, Bishop, Texas, filed suit against Maryland American General Insurance Company and several other defendants and there alleged various theories of recovery relative to its loss. In that part of the suit against the insurance company, the bank alleged the loss was caused by a

"dishonest, fraudulent or criminal act" of the bank's president within the coverage of its Banker's Blanket Bond issued by the insurance company.

The bank thereafter filed a motion for summary judgment against the insurance company only. After a hearing based upon affidavits and other summary judgment evidence, the trial court in its judgment: severed the cause of action against the insurance company, granted the bank's motion, and awarded the bank $73,978.42. From that judgment the defendant insurance company has appealed.

Appellant's chief complaints are that the record reflects genuine issues of fact about: whether any act of the bank's president was dishonest, fraudulent or criminal; and the amount of loss caused by any disputed act of the president.

The operative facts which were before the trial court are reflected in the affidavits and depositions of three former bank officers who were defendants in this suit before severance, present employees of the bank, and the owner of the business whose account is in question. The testimony of the president, of whose action the bank complains, was not available because he was killed in a hunting accident November 29, 1970, which was before suit was filed.

The account of H & G Construction Company is the one complained of by the bank. H. L. Fox, the owner of H & G, had been a customer of the bank since 1965. Checks drawn on that account during late October and November 1970 arrived at the bank when deposits were insufficient to cover them. The bank contends that H & G failed to deposit funds to cover these checks; therefore, the bank has sustained a loss by the action of the then bank president, Howard Pfluger, who was in charge of the account.

When checks like these are received by the bank from a transmitting bank, the receiving bank has twenty-four hours within which to return the checks for any reason. If it does not do so, its balance with the transmitting bank is reduced and it cannot thereafter return the checks for credit even though the drawer of the check had insufficient funds on deposit with the bank to cover the checks. Thus, if the receiving bank fails to return a check within twenty-four hours, it is responsible for collecting the amount of the check from the depositor in question. If it is unable to do so, it sustains a loss.

The appellee bank had a standard procedure for dealing with checks received by it from various transmitting banks. Upon receipt of these checks, the bank would send them to the bookkeeping department to be charged against individual accounts. Irregular checks, called "cuts", were those which had an improper endorsement or a questionable signature and those which exceeded funds on deposit in the particular account against which drawn. The "cuts" were alphabetized by the receiving clerks and delivered to the cashier who then circulated the "cuts" among the officers of the bank. Each officer would review the "cuts" of those customers for whom he was responsible and then would either approve the checks as overdrafts, direct that they be recirculated (held without recording), or order that they be returned to the transmitting bank. Whether a check was paid as an overdraft or recirculated, the effect was the same: unless the customer made a covering deposit, the bank suffered a loss. This effect resulted because the receiving bank had retained the check beyond twenty-four hours.

Instead of ordering the particular checks here in question to be returned to the transmitting bank, Pfluger (supervisor of the H & G account) directed them to be recirculated. During a period of about three weeks beginning about October 21, 1970, checks so recirculated mounted to a sum in excess of $73,000.00. In its petition, the bank contends that the recirculated checks were never covered by H & G; that the bank has accordingly sustained a loss by the action of Pfluger; and that the action of Pfluger, and consequent loss, was within the insurance company's bond which indemnified the bank against:

"(A) Any loss through any dishonest, fraudulent or criminal act of any of the

Employees, committed anywhere and whether committed alone or in collusion with others, . . ."

In three (1, 4 and 7) points of error, appellant complains that the trial court erred in granting the summary judgment because genuine issues of fact exist about: (1) whether any act of Pfluger was dishonest, fraudulent or criminal; (4) the amount of the bank's loss; (7) whether the bank had protected and preserved claims against any other defendants for which it was entitled to reimbursement.

In considering these points we will be guided by the principles restated in Farley v. Prudential Insurance Company, 480 S. W.2d 176, 178 (Tex.Sup.1972):

"The burden of proof is on the movant, and all doubts as to the existence of a genuine issue of material fact are resolved against him. All conflicts in the evidence are disregarded, and the evidence which tends to support the position of the party opposing the motion is accepted as true. . . ."

We will first discuss point 4 where the appellant urges fact issues about the amount of the bank's loss, even assuming no fact issue as to the existence °of "any dishonest, fraudulent or criminal act." On the loss issue the appellee proffers the affidavit of Charles Henderson, a successor to Pfluger as president of the bank. Henderson swears: the attached checks of H & G were in the bank records; no deposits were ever made to cover the checks; $73,978.42, the amount of the attached checks, is still owing to the bank; the bank (appellee) was charged by corresponding banks with the H & G checks by reducing the credit balance of the bank in each of these corresponding banks. The recirculation of these checks by Pfluger was shown by affidavits and depositions of other employees of the bank who were on duty at the time of the recirculation.

On the other hand, the appellant contends the answers of Fox (owner of H & G) to written interrogatories raises fact issues about the amount of loss the appellee

claims. We agree. These answers show: From his bookkeeper who had just returned from a conference at the bank with Pfluger in November 1970, Fox first learned of the contention that the H & G account was overdrawn. Pfluger had advised that the bank was holding checks totaling $35,000.00, rather than $73,000.00. For a period of time after October 1, 1970, H & G had assigned accounts receivable to the bank; these accounts were collected directly by the bank from various oil companies. Later, Pfluger met with Fox in his office in Pettus, Texas, where the checks and accounts receivable were by them reviewed. A disagreement arose as to what H & G owed. Fox contended that the bank owed H & G $35,000.00. When asked whether Pfluger had told Fox (at the Pettus meeting) that the bank was holding checks worth approximately $74,000.00, Fox replied that Pfluger said the overdraft was about $35,000.00, but Pfluger could not account for the proper application of assigned accounts receivable, got upset and left.

We are required to accept Fox's answers as true and give the appellant the benefit of every reasonable inference therefrom that can be drawn in appellant's favor. Farley v. Prudential Insurance Company, supra; Gulbenkian v. Penn, 151 Tex. 412, 252 S.W.2d 929 (1952). We hold that a fact issue was raised by Fox's testimony about the amount of recirculated checks which H & G had made no provision to pay either by deposits or assignment of accounts receivable. The evidence on the loss issue tending to support the bank may be more believable than that tending to support the insurance company, but it is not the function of summary judgment procedure to resolve fact issues. Dorman v. Malloy, 408 S.W.2d 138 (Tex. Civ.App.—Beaumont 1966, n. r. e.). Appellant's point 4 is sustained.

Because we are reversing this case and remanding it for trial based on our reasons set out in our discussion of appellant's point 4, we do not deem it necessary to re-

solve the appellant's remaining points of error.

The judgment of the trial court is reversed and the cause is remanded for trial.