MARYLAND AMERICAN GENERAL
INSURANCE COMPANY, Relator,

v.

Hon. Jack R. BLACKMON,
Judge, Respondent.

No. C–1104.

Supreme Court of Texas.

July 21, 1982.

Fulbright & Jaworski, Tom Connally and Janice P. Kemp, Houston, Gary, Thomasson, Hall & Marks, Richard A. Hall, Corpus Christi, for relator.

William F. Wallace, Jr., Corpus Christi, Hooper & Chappell, David F. Chappell, Fort Worth, for respondent.

McGEE, Justice.

This is an original mandamus proceeding concerning pretrial discovery in a suit brought by First State Bank of Bishop (Bank) against Relator, Maryland American General Insurance Company (Maryland American). The Bank is the real party in interest. Maryland American seeks an order from this Court compelling the Honorable Jack R. Blackmon, Judge of the 117th Judicial District Court in Nueces County, to vacate his orders requiring Maryland American to produce materials concerning the filing, investigation and evaluation of an insurance claim and requiring its attorney to appear for a deposition and produce his files.

This suit arose from losses sustained by the Bank resulting from its honoring of checks drawn on insufficient funds in certain customers' accounts and from loan transactions with these customers. The Bank determined these losses were caused by the dishonesty of its president, now deceased, and sought to collect on its bankers blanket bond (a fidelity insurance agreement) issued by Maryland American. After notifying Maryland American of its claim, the Bank in late 1970 initiated two lawsuits against the customers, the estate of its deceased president, and others, alleging *inter alia* losses caused by the dishonesty of its president. These lawsuits were eventually consolidated and Maryland American, who had previously intervened, was joined as a defendant with liability alleged under the terms of the bond. Maryland American denied liability but alternatively cross-claimed against the individual defendants for indemnity and subrogation should its liability be established.

Beginning in 1972, the Bank filed a series of amended petitions in which it alleged Maryland American was liable for compensatory and punitive damages in addition to the bond claim as a result of the insurance company's "bad faith" failure to properly investigate and make payment under the bond. The pleadings allege Maryland American "consciously, willfully and fraudulently" refused to fulfill its obligations under the bond, asserting a cause of action in tort, and pleading statutory liability under the Texas Insurance Code and the Texas Deceptive Trade Practices Act. These will be referred to as the bad faith claims.

In connection with the Bank's bad faith claims, the Bank in September 1981 served Maryland American with a Request for Production of the following materials pursuant to Rule 167:[1]

1. All documents, tape recordings, video tape recordings, photographs, or other recorded or reproduced documents and items related to or in any way pertaining to the filing of the insurance claim which is the basis of this litigation, the investigation by your company, its agents, servants, employees, or others of said claim, and all other such material related to or in any way connected with the filing and investigation of said claim.

2. All documents, memoranda, letters, notes, or otherwise written or recorded materials pertaining to or in any way related to the decision by your company to either pay or not pay the insurance claim which is the basis of this litigation.

3. All documents, memoranda, letters, notes, or otherwise written or recorded materials which in any way relate to or involves your company's policies with regard to payment of insurance claims of the type or similar to the type of insurance claim which is the basis of the above styled litigation, for the calendar year 1970 through the present.

4. All records of membership of all claim committees related to this claim, the minutes of all meetings of such committee or committees, and all memoranda or other records of communication to or from any member of these committees related to the subject claims of this Plaintiff, commencing December 1, 1970. (If there were or are more than one committee with jurisdiction of the subject claim, all minutes, memoranda, or communications of each such committee should be produced.)

The Bank also requested an agreement from Maryland American's attorney that he would appear for a deposition to testify about subjects relating to the Bank's claims. In response, Maryland American filed a "Motion with Respect to Proposed Deposition of Counsel and Request for Production" in which it requested a protective order under Rule 186b on the basis that the documents and testimony sought by the Bank were privileged from discovery under the proviso in Rule 186a and the attorney-client privilege.

1. All references are to the Texas Rules of Civil Procedure unless otherwise indicated.

After two hearings on these and other related matters, the trial court rendered an order on March 4, 1982, compelling Maryland American to produce all documents requested by the Bank. The court further stated in the order that "no 'in-camera' inspection of the materials ordered to be produced is appropriate...." The following day, the court rendered a second order extending the deadline for production and ordering Maryland American's attorney to appear for a deposition and to produce all files, correspondence, records, and intra-office memoranda related to the Bank's cause of action.

We granted Maryland American leave to file a petition for writ of mandamus and a temporary stay on discovery. We now grant the writ as set out below.

Maryland American contends that Judge Blackmon abused his discretion in ordering the production of the materials requested by the Bank and the deposition of its attorney. Rule 186a defines the scope of permissible discovery, and requires that the information sought to be discovered be both relevant to the subject matter involved in the lawsuit and reasonably calculated to lead to admissible evidence. However, the Rule prohibits the discovery of such information if it is privileged and specifically extends such privilege to matters described in the following proviso:

> Provided, however, that subject to the provisions of the succeeding sentence, the rights herein granted shall not extend to the work product of an attorney or to communications passing between agents or representatives or the employees of either party to the suit, or communications between any party and his agents, representatives, or their employees, where made subsequent to the occurrence or transaction upon which the suit is based, and made in connection with the prosecution, investigation, or defense of such claim, or the circumstances out of which same has arisen, and shall not require the production of written statements of witnesses or disclosure of the mental impressions and opinions of ex-

perts used solely for consultation and who will not be witnesses in the case or information obtained in the course of an investigation of a claim or defense by a person employed to make such investigation.

■ The Bank's lawsuit against Maryland American involves two theories of recovery: the first seeks payment on the bond, and the second seeks recovery for the insurance company's "bad faith" dealings. We will assume for purposes of this opinion that the information ordered to be disclosed is relevant. *See Crane v. Tunks,* 160 Tex. 182, 328 S.W.2d 434 (1959). The question before us is whether a privilege from discovery is applicable in this situation.

Paragraphs 1 and 2 of the Request for Production seek materials relating to the filing and investigation of the insurance claim and materials relating to the insurance company's decision to either pay or not pay the claim. Paragraph 4 also appears to request information relating to this claim. As between Maryland American, its agents, representatives and employees, these materials are clearly within the proviso of Rule 186a with respect to the Bank's contract cause of action on the bond. *Allen v. Humphreys,* 559 S.W.2d 798 (Tex.1977); *Ex parte Hanlon,* 406 S.W.2d 204 (Tex.1966). Bank does not dispute this fact; rather, it contends that the privilege does not apply with respect to its bad faith allegations because the communications sought are the "operative facts" which form the basis of those causes of action. Apparently, the Bank contends that the claim of privilege relating to the contract cause of action is thereby vitiated. We do not agree.

In order to recover under its contract cause of action, the Bank must prove its president was dishonest and that such dishonesty caused losses within the terms of the bond. Maryland American is entitled to defend itself by requiring the Bank to prove its cause of action and assert whatever defenses it may have. The protection of a party's right to defend a suit brought against him is the essence of the proviso in Rule 186a, and the privilege exists so long as that right exists. Regardless of the oth-

er reasons which might justify the use of this information, it would be impossible to limit the prejudicial effect of disclosure on Maryland American's right to defend the contract cause of action. Moreover, if a plaintiff attempting to prove the validity of a claim against an insurer could obtain the insurer's investigative files merely by alleging the insurer acted in bad faith, all insurance claims would contain such allegations. We hold that Maryland American is entitled to assert the privilege so long as its liability on the bond remains undetermined.[2]

■ The principles against disclosure of information concerning a pending cause of action apply with equal force to the attorney-client privilege and the rules concerning an attorney's work product. However, just as the attorney-client privilege continues after the relationship terminates, it may continue after the controversy which created the need for the communication is resolved. *See West v. Solito,* 563 S.W.2d 240 (Tex.1978). The purpose of this privilege is to promote the unrestrained communications between an attorney and client in matters where the attorney's advice and counsel were sought by ensuring that these communications will not be subject to subsequent disclosure. Thus, the attorney-client privilege has been held to apply in these circumstances even after the insurer's contract liability is established. *E.g., LaRotunda v. Royal Globe Insurance Co.,* 87 Ill. App.3d 446, 42 Ill.Dec. 219, 228, 408 N.E.2d 928, 937 (1980).

The Bank contends the attorney-client privilege should not apply with respect to the bad faith claims because the communications were made in furtherance of a fraud. It cites *United Services Automobile Ass'n v. Werley,* 526 P.2d 28 (Alaska 1974), wherein that court ruled that communications between an attorney and client could

be discovered where the plaintiff made a prima facie showing, as opposed to a mere allegation, that a fraud had been committed in connection with the attorney-client relationship. That case involved a similar tort cause of action against an insurer for its failure to pay a claim. However, in that case the insurer's liability on the underlying claim was established prior to entry of the discovery order. We therefore do not reach the issue decided in the *Werley* case.

■ The Bank contends that, even if a claim of privilege is applicable, the trial court's order was proper because Maryland American failed to present any evidence which would support the privilege. Maryland American has already produced those documents to which no privilege is asserted, and has offered to tender the remaining documents to the court for its inspection in camera. It is apparent from the trial court's order and its previous letter to counsel[3] that the court was of the erroneous opinion no privilege would apply, and on that basis the court declined to make any factual determination concerning which documents, if any, fell within a privilege. We are confident that Judge Blackmon will now employ appropriate procedures to protect these privileges consistent with our prior opinions. *See, e.g., West v. Solito,* 563 S.W.2d 240 (Tex.1978).

We anticipate Judge Blackmon will set aside his orders of March 4 and 5, 1982, requiring Maryland American to produce its files and requiring its attorney to appear for a deposition. Should he fail to do so, the Clerk of the Supreme Court will be instructed to issue the writ of mandamus.

---

2. The Bank obtained a summary judgment against Maryland American in 1974 on part of its bond claim, but this judgment was reversed by the court of appeals and the cause was remanded for trial. *Maryland American General Ins. Co. v. First State Bank of Bishop,* 515 S.W.2d 57 (Tex.Civ.App.—Corpus Christi 1974, writ ref'd n.r.e.).

3. In a letter to counsel for both parties, dated February 18, 1982, the trial court stated that the Bank was entitled to full discovery and that "the claim of privilege will not be allowed by the Court.... The Court does not desire to inspect the insurer's file in camera."