**Paul Edward MENTON, D.D.S., et al., Relators,**

**v.**

**Hon. H.M. LATTIMORE, Judge 96th District Court, Tarrant County, Respondent.**

**No. 2–83–220–CV.**

Court of Appeals of Texas, Fort Worth.

Feb. 24, 1984.

---

Lancaster Smith, Jr., Harvey L. Davis, Smith, Smith & Smith, Dallas, for relator, Terri Leigh Crawford.

Strasburger & Price, P. Michael Jung and Bryan J. Maedgen, Dallas, for relators, Paul Edward Menton, D.D.S., and Paul Edward Menton, D.D.S., Inc.

Keith & Strickland, and Darrell L. Keith and Carol J. Baker, Fort Worth, for respondents and real parties in interest Bhushan D. Bajaj and Sudesh Bajaj, Individually and in behalf of the Estate of Vikram Jeet Bajaj, Deceased, and as Next Friends for Sangeeta Bajaj, a Minor.

Patterson, Lamberty, Kelly & Stanford, Inc., and J. Redwine Patterson, Dallas, for relator, Sandra Smith.

## OPINION ON WRIT OF MANDAMUS

JORDAN, Justice.

Relators Paul Edward Menton, D.D.S., Paul Edward Menton, D.D.S., Inc., and Ter-

ri Leigh Crawford seek a Writ of Mandamus directing Respondent Judge H.M. Lattimore to vacate his order compelling production of the tape and transcript of the June 30, 1981 interview of Relators by a representative of the insurance carrier for Relators.

Writ of Mandamus is conditionally granted.

The above-mentioned order compelling production by Relators was issued by Respondent in a wrongful death case involving allegations of dental malpractice. On June 26, 1981, the decedent Vikram Bajaj was seen as a patient by Relator Paul Edward Menton, D.D.S., for extraction of four wisdom teeth. While on intravenous sedation for the extraction procedure, Bajaj suffered cardiac and respiratory arrest, did not regain consciousness, and was pronounced dead at Arlington Memorial Hospital on July 6, 1981.

Plaintiffs in the wrongful death case are Bhushan and Sudesh Bajaj, parents of Vikram Bajaj, deceased, Sangeeta Bajaj, sister of Vikram, and the estate of Vikram Bajaj. They will be referred to as plaintiffs Bajaj. Relators, defendants in the wrongful death case, will be designated as Dr. Menton, Menton, Inc., Sandra Smith, or Smith, and Terri Crawford, or Crawford.

Plaintiffs Bajaj sued Relators for injuries and damages under the Texas Wrongful Death Statute, Article 4671, T.R.C.S., and the Texas Survival Statute, Article 5525, T.R.C.S., arising from the death of Vikram Bajaj on July 6, 1981, which plaintiffs claim occurred as a result of Defendants'-Relators' dental care and treatment of Vikram on June 26, 1981.

Plaintiffs Bajaj contend, as the basis for their suit against Relators, that Dr. Menton was negligent in failing to properly evaluate Vikram's pre-anesthesia physical condition, administering excessive or relatively excessive doses of drugs, failing to timely or properly monitor Vikram during intravenous sedation, in abandoning Vikram Bajaj, failing to provide timely or proper treatment of Vikram's respiratory or cardiac distress or arrest, and among other things, in failing to properly or adequately train or supervise his assistants, Sandra Smith and/or Terri Crawford.

On June 30, 1981, Dr. Menton and two employees of his professional corporation, Sandra Smith and Terri Leigh Crawford, who had assisted him in the treatment of Vikram Bajaj on June 26, were interviewed concerning the events of June 26, 1981, by Jerry Wollum, an insurance claims agent for the Chubb Lloyd's Insurance Company which carried liability coverage for Dr. Menton, his professional corporation, and its employees. By this time, counsel had already been retained by the Bajaj family to investigate the occurrence of June 26, 1981 and the circumstances of Vikram's treatment by Menton. The June 30th interview was tape-recorded and the tape recording was later transcribed by order of the district court. Respondent Judge has ordered that this transcript be produced to the plaintiffs in the wrongful death case, notwithstanding claims of privilege asserted by Relators under Texas Rules of Civil Procedure 186a.

An inquest was conducted into the events surrounding the death of Vikram Bajaj, and Dr. Menton and Sandra Smith testified to some or all of the following items: (1) Vikram was connected to a Dynamap Monitor (a blood pressure measuring device) by Terri Crawford before administration of sedation and before he lost all vital signs; (2) this was a routine practice in Menton's office at the time; (3) the Dynamap monitored and automatically reported Vikram's blood pressure, pulse, and mean arterial pressure every three minutes while he was sedated; (4) Smith continuously attended and monitored Vikram while he was intravenously sedated; (5) Dr. Menton or one of his dental surgical assistants was always present with sedated patients as a matter of routine at the time; (6) the Dynamap monitor was used routinely on "all" patients in Menton's office; (7) Terri Crawford measured Vikram's pulse and blood pressure on two separate occasions before and after the Dynamap was connected; (8) such taking of vital signs on sedated patients was a routine practice in Menton's office at that time; (9) Smith

observed nothing unusual while Vikram was sedated until the Dynamap monitor alarm "went off" and she saw Vikram had "turned yellow" and "stopped breathing" within thirty seconds; (10) Smith was first alerted to a problem with Vikram's condition when the Dynamap "alarm" had "gone off"; (11) Menton arrived within a few seconds after the "alarm sounded."

It developed during the course of discovery by depositions and other discovery procedures that most, if not all, of the above-recited facts testified to at the inquest by Menton and Smith were false. It was admitted, among other things, that the Dynamap monitor never was attached, that Sandra Smith was not in the room with Vikram at all times while Dr. Menton was out of the room, that Terri Crawford had not monitored Vikram's pulse and blood pressure at all, and that Dr. Menton had asked both Smith and Crawford to falsify some or all the above matters. During oral argument, counsel for Dr. Menton conceded that Dr. Menton had been indicted for aggravated perjury in connection with the inquest testimony and had entered either a guilty plea or a plea of nolo contendere to those charges.

■ This court has jurisdiction to issue, in a proper case, the extraordinary Writ of Mandamus. TEX.REV.CIV.STAT.ANN. art. 1824, effective June 19, 1983, authorizes courts of appeal or any justice thereof, to issue *all writs of mandamus agreeable to the principles of law regulating such writs, against any judge of a district or county court.*

The pivotal question is whether the taped interview of Relators of June 30, 1981 falls within the privilege granted by Rule 186a to certain communications concerning the prosecution, investigation, or defense of a claim or cause of action. Relators contend that it does and Respondent and the real parties in interest, the Bajajs, deny that the privilege applies to this particular communication because of the peculiar facts herein.

TEX.R.CIV.P. 186a, titled "Scope of Examination", in general, grants to any party the right to take the testimony of any person on any matter, not privileged, relevant to the subject matter involved in a pending action, whether it relates to the claim or defense of the examining party or to the claim or defense of any other party. Involved in this mandamus action is the portion of the Rule which states in pertinent part:

Provided, however, that subject to the provisions of the succeeding sentence, the rights herein granted shall not extend to the *work product of an attorney or to communications passing between agents or representatives or the employees of either party to the suit, or communications between any party and his agents, representatives, or their employees, where made subsequent to the occurrence or transaction upon which the suit is based, and made in connection with the prosecution, investigation, or defense of such claim, or the circumstances out of which same has arisen,* ....

■ *The propriety of a petition for a writ of mandamus to correct a trial court* order compelling discovery of privileged information is well established by numerous decisions of the Supreme Court. The rationale of such cases is clear and compelling: forced disclosure of privileged material subjects the party disclosing to irreparable harm, which cannot adequately be remedied on appeal following final judgment. *See West v. Solito,* 563 S.W.2d 240 (Tex. 1978); *Stewart v. McCain,* 575 S.W.2d 509 (Tex.1978); *Houdaille Industries, Inc. v. Cunningham,* 502 S.W.2d 544 (Tex.1973); *Maresca v. Marks,* 362 S.W.2d 299 (Tex. 1962); *Crane v. Tunks,* 160 Tex. 182, 328 S.W.2d 434 (1959).

In some cases, the court has granted mandamus to prevent the disclosure of privileged or confidential materials without discussing the appropriateness of mandamus as a remedy. *See Maryland American General Insurance Co. v. Blackmon,* 639 S.W.2d 455 (Tex.1982); *State v. Ashworth,* 484 S.W.2d 565 (Tex.1972); *Russell v. Young,* 452 S.W.2d 434 (Tex.1970).

In this case, ignoring for the moment the claims of Respondent and the real parties in interest that because of a fraudulent and deceitful scheme to conceal the real facts, Rule 186a is inapplicable, it is clear that the above-quoted provision of Rule 186a, concerning communications involved in the prosecution, investigation, or defense of a claim, would be applicable to the taped interview of Relators on June 30, 1981. A statement by insured parties to their insurer or its representative, in the course of an investigation by the insurer of an event giving rise to potential liability, falls squarely within the protection of Rule 186a. It involves a statement by the insured and his agents or employees to a representative (the insurance investigator) in connection with the events of June 26, 1981 leading to the death of Vikram Bajaj, subsequent to those events. Moreover, the June 30 interview and the transcript thereof fall squarely within Rule 186a's protection of "information obtained in the course of an investigation of a claim or defense by a person employed to make such an investigation." *See Allen v. Humphreys,* 559 S.W.2d 798 (Tex.1977); *Maryland American General Insurance Co. v. Blackmon, supra.*

We cannot conceive of a better example for the application of the "work product" provisions of Rule 186a than the one involved in this case. It was obvious to everybody, including the Bajaj family, Dr. Menton and his assistants and their insurance carrier, immediately following the tragic events of June 26, 1981, that a claim and potential lawsuit was not only a distinct possibility but a very great probability. The Bajaj family, in fact, before June 30, had already retained an attorney.

As a result, the Relator's insurer sent its claims representative to interview the Relators, all of whom had participated in the planned oral surgery on Vikram Bajaj, and to investigate the events of that day. This was prior to Vikram's death on July 6, 1981, but, of course; the interview was directed at the occurrence of June 26 which led eventually to his death.

Respondents', and the plaintiffs in the wrongful death action, the Bajaj family, principal argument against the issuance of the Writ of Mandamus here is that the Writ will not lie to prevent discovery of the June 30, 1981 taped communications or statements because they were made for the planning, committing, or furthering of an illegal or perjured false defense or were actually a part of a fraudulent or criminal scheme. This contention is based upon the admittedly false statements concerning the events of June 26 made by Relators Dr. Menton and Sandra Smith at the inquest held by the Tarrant County Medical Examiner. There is no question that Menton and Smith at first misrepresented many of the basic facts involved in the care and treatment of Vikram Bajaj on June 26.

The question we have to answer, and it seems to be one of first impression in Texas, is whether or not these misrepresentations and this despicable and contemptible attempted cover-up by all of the Relators, including Menton, Smith and Terri Crawford, makes inapplicable in this case the privilege granted by Rule 186a. We hold that it does not and that the "work product" privilege of Rule 186a applies to the June 30 taped interview.

In support of their argument, the plaintiffs in the wrongful death case attempt to draw an analogy between the law of work-product privilege and that of the attorney-client privilege. The case law holds, as we will show, that Rule 186a means exactly what it says, and is to be applied according to its terms without regard to the wisdom vel non of suggested but non-existent public policy defenses. In regard to the attorney-client privilege, it is noted that TEX.R. EVID. 503, governing the attorney-client privilege, contains an express exception for communications in furtherance of a crime or fraud, while Rule 186a, governing the work-product privilege, does not. The Official Comment to Rule 503 makes clear that its limitations are not to be applied to the work-product privilege:

This rule governs only the lawyer/client privilege. It does not restrict the scope

of the work product doctrine. See TEX. R.CIV.P. 186a.

There are several cases decided by the Supreme Court where the enforcement of the work-product privilege of Rule 186a worked hardships and rather unfair and harsh results. *See Ex parte Hanlon,* 406 S.W.2d 204 (Tex.1966); *Ex parte Ladon,* 160 Tex. 7, 325 S.W.2d 121 (1959); *State v. Ashworth, supra; Shirley v. Dalby,* 384 S.W.2d 362 (Tex.Civ.App.—Texarkana 1964, writ ref'd n.r.e.). In all of these cases, the courts, despite apparent harsh and unfair results, strictly applied and followed the work-product privilege of Rule 186a.

In *Ex parte Ladon, supra,* while Rule 186a was not involved, Rule 167 was, and it contained a work-product privilege now embodied in Rule 186a. In *Ladon,* a rather harsh result was reached because the Supreme Court held that under the privilege contained in Rule 167, the trial attorney for the San Antonio Transit Company was not required to disclose a list of bus passengers on a bus involved in a collision with another vehicle because such list was privileged under Rule 167. That result was deemed so harsh that the legislature amended the Rule so that such passenger lists are now discoverable.

In *Ex parte Hanlon, supra,* the Supreme Court held that Rule 186a prevented disclosure of the name of a hit-and-run driver, obtained by a potential defendant's insurance investigator, even though this meant that in all probability the injured party would be denied compensation and the driver would escape liability altogether. The injured party earnestly contended for an exception to Rule 186a on the ground that "when the identity of a proposed defendant who may have done serious injury to a prospective plaintiff is at issue, the policy consideration of preserving a work product is little served while an important and vital policy of vindicating justice is jeopardized." 406 S.W.2d at 207. The Court, while expressing sympathy with the plaintiff's plight, rejected this argument.

*[T]here is much to be said for the enforcement of statutes and rules in accordance with their literal wording.* Admittedly, the facts of the present case are highly unusual and we have been unable to find any controlling or persuasive authority relating to the situation. The provisos in Rule 186a seem to be peculiar to the Texas practice. (Citation) *It could well be that the giving of the information requested of Hanlon should not as a matter of abstract justice be frustrated by operation of the provisions of Rule 186a, but the wording of the pertinent provisions leaves little or no room for the exercise of discretion by a trial judge (citation), and the fact remains that the wording of the provisos is unambiguous and covers the exact situation we have before us ...* (Emphasis added).

Here, as in *Hanlon,* a sense of outrage and fundamental honesty and fairness would seem to demand that the 186a privilege be denied. But *Hanlon* and other cases cited require a strict and literal interpretation of the work-product privilege provisions of Rule 186a and leave "little or no room" for exceptions or for judicial discretion. *See also Houdaille Industries, Inc. v. Cunningham, supra,* where the Supreme Court again emphasized the rule that "the work product limitations of Rule 167 proviso were intended to be enforced as originally written." 502 S.W.2d at 549.

The language of the Supreme Court in *Maryland American General Insurance Company v. Blackmon, supra,* a 1982 case involving a suit by a bank against its insurer on its fidelity bond issued upon contract and also upon allegations of bad faith dealing by the insurer, is particularly appropriate here.

Maryland American is entitled to defend itself by requiring the Bank to prove its cause of action and assert whatever defenses it may have. The protection of a party's right to defend a suit brought against him is the essence of the proviso in Rule 186a, and the privilege exists so long as that right exists. Regardless of

the other reasons which might justify the use of this information, it would be impossible to limit the prejudicial effect of disclosure on Maryland American's right to defend the contract cause of action. *Moreover, if a plaintiff attempting to prove the validity of a claim against an insurer could obtain the insurer's investigative files merely by alleging the insurer acted in bad faith, all insurance claims would contain such allegations. We hold that Maryland American is entitled to assert the privilege so long as its liability on the bond remains undetermined.* (Emphasis added).

Because of the plain language of the work-product privilege of Rule 186a and the interpretations thereof by the Supreme Court, this court is not authorized to engraft upon Rule 186a an exception thereto for "illegal, perjured or dishonest defense" or for the planning or perpetration of a crime or fraud. We cannot condemn too harshly the perjured testimony of Relators Dr. Menton and Sandra Smith. Such conduct can never be condoned or tolerated and of course it is expected the plaintiffs will use such conduct on the part of Relators to their advantage, at trial on the merits of the wrongful death case. However, Relator's conduct, no matter how reprehensible, can have no effect on the plain language of Rule 186a, which makes the taped interview of June 30, 1981 privileged and not discoverable. We have not been referred to a case, and we have not found one, where any exception was made to the plain provisions of the work-product privilege of Rule 186a.

■ Plaintiffs Bajaj next argue that if the taped interview of June 30, 1981 is in fact privileged, the Relators in some way have each waived that privilege. Plaintiffs first point out that Sandra Smith, one of Dr. Menton's dental assistants, has expressly waived her privilege under Rule 186a, and that at least her portion of the June 30 interview is discoverable. On its face that argument is sound, but Smith's portion of the interview is really not sever-

able from the interview by the insurance investigator of the other two Relators, Menton and Crawford.

The disclosure of Wollum's interview with Smith would of necessity reveal all or part of the interview of and statements made by Menton and Crawford. The disclosure of Smith's portion of the interview would divulge at least some of the contents of the investigation into the claim against all the defendants. Her statements would delve into matters and communications between all the defendants, their employees, and their agent or representative, Wollum, and thus violate the privilege provided by Rule 186a. The revelation of Smith's statements to the investigator would, in reality, divest the entire June 30 interview and investigation of its privileged status. The privilege would thus be destroyed, and in light of our previous discussion and the Supreme Court decisions on the sanctity and importance of the Rule 186a privilege, we cannot honor plaintiffs' request for discovery of Smith's portion of the June 30 interview.

Moreover, Sandra Smith, as well as Dr. Menton and Terri Crawford, were employees of Paul Edward Menton, D.D.S., Inc., which is potentially vicariously liable for the occurrence of June 26, 1981. As such employee, Smith could not waive the work-product privilege as to the defendant-corporation.

■ The Bajaj family next contends, rather nebulously, that the other two Relators, Menton and Crawford, have in some hypothetical and theoretical manner waived the privilege. It is contended that because Dr. Menton in his deposition denied that he had attempted to persuade Sandra Smith to falsify the facts, he may not now prevent the plaintiffs Bajaj from presenting proof of such falsehoods as were made on the June 30 taped interview. The trouble with this argument is that it assumes that the tape contains proof of the falsehoods. The plaintiffs offer no authority for this proposition or for any of their other waiver theories, and we reject the argument that because Menton denied trying to persuade

Smith to falsify the facts, he has waived the 186a privilege.

■ Plaintiffs also argue that the work-product privilege of Rule 186a has been waived by all of the Relators because "they have freely disclosed some of the fraudulent actions committed and statements made." It is true that each of the Relators finally admitted that much of their inquest testimony regarding the events of June 26 was false, but these admissions were not freely given, as plaintiffs assert. The admissions were made on depositions under oath, and at a time when Relator Menton had either been indicted for aggravated perjury or would in all likelihood be indicted for that crime. We do not think the privilege was freely and intentionally waived.

There are other somewhat vague allegations of waiver and/or estoppel in respondent's and plaintiffs' brief. We have carefully read the entire record in this case, as well as plaintiffs' excellent brief, but, without further discussion, reject all the arguments on waiver and/or estoppel. We hold that the work-product privilege contained in TEX.R.CIV.P. 186a, prevails and that the June 30 taped interview is not subject to discovery.

■ A review of the cases indicate that there are three situations in which the appellate court will exercise its power to issue a writ of mandamus to direct a district court with regard to discovery matters: (1) to correct an abuse of discretion by the trial court; (2) where an appeal from a final judgment would afford an inadequate remedy, and this is particularly true where the trial court has ordered discovery of matters which the appellate court holds is privileged or otherwise not discoverable; and (3) where a unique question of discovery law is presented. *See* The Use of Mandamus to Review Discovery Orders in Texas: An Extraordinary Remedy, 1 Rev. Litigation 325, 326–38 (1981); Comment, The Expanding Use of Mandamus to Review Texas District Court Discovery Orders: An Immediate Appeal is Available, 32 S.W.L.J. 1283, 1291–96 (1979).

We believe each of these factors enumerated above are present in this case and we conditionally order the Writ of Mandamus issued for each of those three reasons. We feel certain that Judge Lattimore will, upon receipt of this opinion, void and rescind his previously issued order granting production of the June 30 taped interview. The Writ will be issued only in the event he does not do so.

Dissent by BURDOCK, J., joined by ASHWORTH and HILL, JJ.

BURDOCK, Justice, dissenting.

I respectfully dissent.

Although mandamus is a legal remedy, it is nevertheless, governed by equitable principles. In some instances, the equitable doctrine of clean hands has been invoked to deny issuance of the writ. *Industrial Foundation of the South v. Texas Industrial Accident Board*, 540 S.W.2d 668, 674 (Tex.1976), *cert. denied*, 430 U.S. 931, 97 S.Ct. 1550, 51 L.Ed.2d 774. There is no better example of an instance where it should be denied than the case before us. Here, as set forth in the majority opinion, there are numerous instances of lying and falsification of records by the relators. Dr. Menton himself pled guilty to charges of aggravated perjury concerning this matter. Clearly, these facts fall short of the "clean hands" necessary for the granting of any equitable remedy.

The majority cites several cases which set forth the proposition that there are no exceptions to the work-product privilege under rule 186a. However, no case relied on by the majority actually protects fraud and perjury once it is proven, which is the case before us. Further, I do not believe that by denying the writ of mandamus, we are creating an exception to the work-product privilege. Rather, we are preventing the work-product privilege from sheltering a new harm—fraudulent conduct and perjury.

TEX.R.CIV.P. 1 provides that:

The proper objective of rules of civil procedure is to obtain a just, fair, equitable and impartial adjudication of the rights of litigants under established principles of substantive law. To the end that this objective may be obtained ... these rules shall be given a liberal construction.

As the commentary of this rule states:

Any procedural device or rule therefore, which impedes the investigation or the evaluation of the facts or the awarding of the just consequences thereon, is incompatible with an ideal procedure. No mere rule of procedural form or courtesy should be allowed to delay or control the disposition of the litigation upon its merits.

As this Court held in *Brightwell v. Rabeck*, 430 S.W.2d 252, 257 (Tex.Civ.App.—Fort Worth 1968, writ ref'd n.r.e.):

The purpose of the Texas Rules of Civil Procedure is to be considered. The controlling rule is T.R.C.P. 1. Generally, the rules are but tools to be used in procedural conduct aimed at the objective of accomplishing justice. They are not ends within themselves, but are means to that end. If their application would effect injustice they are to be disregarded for that is the antithesis of their purpose. *They should never be applied to defeat the "justice and right of the case" which* Judge Phillips said in *Gilmore v. O'Neil*, 107 Tex. 18, 173 S.W. 203 (1915), *was "what the law of a case ought to be."* [Emphasis added.]

By granting the writ in this particular case, we have, in essence, protected and concealed the deceit and perjury perpetrated by the relators. In order to avoid any notion that such activity is condoned and, further, that justice may be served here, the order compelling production of the tape and transcript thereof of the June 30th interview should be upheld.

Therefore, I would decline to issue the writ of mandamus and would affirm the decision of the trial court below.