538 So.2d 100 (1989)
COLONIAL PENN INSURANCE COMPANY, Petitioner,
v.
Roslyn MAYOR, Respondent.
No. 88-2731.
District Court of Appeal of Florida, Third District.
February 7, 1989.
Wicker, Smith, Blomqvist, Tutan, O'Hara, McCoy, Graham & Lane and John C. Hamilton, Cooper, Wolfe & Bolotin and Marc Cooper, Miami, for petitioner.
Ress, Gomez, Rosenberg, Howland and Mintz and Keith A. Truppman, North Miami, for respondent.
Before SCHWARTZ, C.J., BARKDULL and COPE, JJ.
*101 SCHWARTZ, Chief Judge.
The respondent Mayor, who was injured in an automobile accident allegedly caused by a phantom vehicle, brought an action against her carrier, the petitioner Colonial Penn, which, as required by Schimmel v. Aetna Casualty & Surety Co., 506 So.2d 1162 (Fla. 3d DCA 1987), joined both a count for UM benefits[1] under the policy and one for the "bad faith" settlement and defense of that claim under section 624.155, Florida Statutes (1987). In this proceeding, Colonial Penn seeks certiorari review of an order which denied its motion to abate the "bad faith" count until the determination of the still pending UM claim and which ordered the immediate production of its claim file and the deposition of its counsel. We grant the petition.
It is apparent, almost as a matter of pure logic, that the right to proceed in a so-called "bad faith" settlement claim against an insurer cannot mature until the primary action  which it is accused of improperly defending  is terminated favorably to the insured. Fortson v. St. Paul Fire & Marine Ins. Co., 751 F.2d 1157 (11th Cir.1985). It therefore follows, as we recently and squarely held in Allstate Insurance Co. v. Lovell, 530 So.2d 1106 (Fla. 3d DCA 1988), that the "bad faith" case itself, together with the concomitant rights to discovery as to the manner in which the initial action was defended, must be postponed[2] pending the completion of that action. Wrenching the word from its context, the respondent points to the statement in Lovell that the "bad faith" case must be abated and discovery postponed while an issue of "coverage" of the initial claim is pending; she then correctly states that the involvement of a phantom vehicle in a UM case is not one of "coverage." E.g., Florida Ins. Guar. Ass'n, Inc. v. Eberhart, 354 So.2d 1265 (Fla. 3d DCA 1978). But Lovell clearly does not confine or limit the issues which precede determination of the initial claim to those of insurance coverage (which was the question actually involved in that case). Instead, the very basis of the Lovell decision refers to the broader concept of an unresolved claim "for uninsured motorist benefits." Lovell, 530 So.2d at 1106. Put another way, the "true rule," which reflects the self-evident proposition that the basic insurance claim must itself be first resolved as a condition of the bad faith case, is succinctly stated in Allstate Insurance Co. v. Shupack, 335 So.2d 620, 621 (Fla. 3d DCA 1976) to the effect that:

until the merits of respondent's claim to benefits have been determined, it is a departure from the essential requirements of law to require petitioner to produce its entire file and all correspondence with its attorneys relative to the claim.[3] [e.s.]
Accord Fidelity & Casualty Ins. Co. v. Taylor, 525 So.2d 908, 910 n. 6 (Fla. 3d DCA 1987), citing Shupack and Maryland Am. Gen. Ins. Co. v. Blackmon, 639 S.W.2d 455 (Tex. 1982).
This conclusion is in entire accord also with the very foundation of the insured's "right" to the claim file and the other discovery she seeks in the first place  our decision in Fidelity Casualty v. Taylor, 525 So.2d at 908.[4] It would be baseless *102 and impermissible to require the production of material which concededly involves the work product and the attorney-client privileges while the initial claim  as to which the privilege remains inviolate  still exists and before the reason for the dissipation of the privileges, that is, some showing of a breach of the duty of good faith to the insured created by section 624.155, Florida Statutes (1987), has come into existence. As the Texas court said in Blackmon:
[r]egardless of other reasons which might justify the use of this information, it would be impossible to limit the prejudicial effect of disclosure on Maryland American's right to defend the contract cause of action. Moreover, if a plaintiff attempting to prove the validity of a claim against an insurer could obtain the insurer's investigative files merely by alleging the insurer acted in bad faith, all insurance claims would contain such allegations. We hold that Maryland American is entitled to assert the privilege so long as its liability on the bond remains undetermined.
Blackmon, 639 S.W.2d at 457-58.
Certiorari granted.
NOTES
[1] The Colonial Penn policy provided for liability and damages under the uninsured motorist coverage to be determined in court, rather than by arbitration.
[2] If the insured is unsuccessful, this postponement may be permanent.
[3] While Shupack was decided before the statutory first party bad faith action came into existence, it was based upon what was then (erroneously as it turned out, see Baxter v. Royal Indemn. Co., 285 So.2d 652 (Fla. 1st DCA 1973), cert. discharged, 317 So.2d 725 (Fla. 1975)) thought to be the same rule under the common law. It is therefore fully applicable to the present situation.
[4] The Taylor holding to this effect is in acknowledged conflict with the Fourth District decision in Manhattan National Life Insurance Co. v. Kujawa, 522 So.2d 1078 (Fla. 4th DCA 1988), review granted (Fla. Case no. 72,388, September 6, 1988). For this reason, that court's decision in State Farm Mutual Automobile Insurance Co. v. Kelly, 533 So.2d 787 (Fla. 4th DCA 1988), that abatement is not required, affords no support for the respondent's position. There would be no reason to abate the second claim, if, as Kujawa holds, the vital discovery is not producible whether it is abated or not.