**TOYOTA MOTOR SALES, U.S.A., INC.,
and Toyota Motor Corporation,
Relators,**

v.

**The Honorable Wyatt H. HEARD,
Judge 190th Judicial District,
Respondent.**

**No. A14–89–00340–CV.**

Court of Appeals of Texas,
Houston (14th Dist.).

June 15, 1989.

John D. Gilpin, Javier Aquilar, Houston, for relators.

Stan Pfeiffer, Houston, for respondent.

Before J. CURTISS BROWN, C.J., and JUNELL and DRAUGHN, JJ.

OPINION

PER CURIAM.

In this original proceeding, relators force us to grapple with the increasingly complex problem of balancing discovery and privilege. Toyota Motor Sales, U.S.A., Inc., and Toyota Motor Corporation urge us to issue a writ of mandamus to the Honorable Wyatt H. Heard directing him to set aside a discovery order entered in cause no. 84–

44379. We overrule the motion for leave to file petition for writ of mandamus.

On September 6, 1982, five persons died when a van struck a 1973 Toyota Corona Stationwagon from the rear. The stationwagon burst into flames. Two occupants of the Toyota survived, the owner and driver, Bayo Adetoye, and Nike Adegbite, the real party in interest. Adegbite's husband and two children died in the fire. Two members of Adetoye's family also died.[1]

Six months after the accident, on March 15, 1983, Nike Adegbite filed a lawsuit in federal court on behalf of herself and on behalf of her deceased children and husband. She dismissed her federal action and on July 12, 1984, refiled in state court to sue Toyota Motor Corporation, a Japanese corporation.

On September 26, 1988, Adegbite served a request for production of documents on relators. Request no. 6 sought "all investigation that was done as a result of the accident made the basis of this lawsuit where such litigation [sic] was done before the institution of suit."

Relators filed an objection, a motion for protective order, and requested a hearing. They argued the documents were exempt on the basis of the attorney-client privilege, the attorney work product privilege, and the party communications privilege. The relators tendered the documents for an in camera inspection and submitted affidavits in support of their objections.

According to the affidavit of Emmett Williams, an independent investigator, the day following the accident, a professional photographer who had taken pictures of the accident scene and the accident vehicles called Williams and offered to sell him the photographs. The photographer told Williams the survivors in the Toyota had talked to an attorney.

Williams then called Toyota's local trial counsel, James Maloney of the law firm of Baker & Botts, informed him of the accident, of the photographer's offer to sell the pictures, and of the photographer's report

that the survivors had contacted an attorney.

Later that same day, Maloney called Williams and told him to proceed with an investigation and to buy the photographs. Maloney told Williams to submit the report to Douglas West, associate general counsel of products liability and insurance for Toyota Motor Sales, U.S.A., Inc. Williams then called the photographer and ordered the photographs. Williams avers the photographer told him he had already sold photographs to attorneys representing the occupants of the Toyota. The record contains no affidavit from the photographer, from James E. Maloney, or from Douglas West.

According to the affidavit of Brian Eyres, managing counsel of product liability litigation for Toyota Motor Sales, U.S.A., Inc., Toyota does not investigate every fuel-fed-fire accident. The company makes the decision to investigate on an ad hoc basis.

By letter dated February 27, 1989, respondent informed the parties that the investigative reports were discoverable. After rehearing on relator's objection, respondent advised the parties of his denial by letter dated March 14, 1989. On April 4, 1989, respondent signed an order overruling relator's objections and ordering production of the documents.

■ Relators argue respondent abused his discretion in ordering them to produce documents the law protects by the attorney work product privilege and the party communications privilege. The attorney work privilege, TEX.R.CIV.P. 166b(3)(a), exempts from disclosure all documents, reports, communications, memoranda, mental impressions, conclusions, opinions, or legal theories prepared and assembled by an attorney in anticipation of litigation or for trial. *Dewitt and Rearick, Inc., v. Ferguson*, 699 S.W.2d 692, 694 (Tex.App.—El Paso 1985, no writ); *Evans v. State Farm Mut. Auto. Ins. Co.*, 685 S.W.2d 765, 767 (Tex.App.—Houston [1st Dist.] 1985, writ ref'd n.r.e.). The attorney work product

---

1. Adetoye filed suit but settled his claim.

privilege extends to materials prepared in anticipation of litigation, by an attorney's agent, be that person a secretary, paralegal, or investigator. *Bearden v. Boone,* 693 S.W.2d 25, 27 (Tex.App.—Amarillo 1985, no writ); *Menton v. Lattimore,* 667 S.W.2d 335, 339 (Tex.App.—Fort Worth 1984, no writ). The party communications privilege also exempts information acquired or compiled in "anticipation of litigation." Tex.R.Civ.P. 166b(3)(d).

The "anticipation of litigation" standard has posed difficulties for courts and for litigants. *See* Cassidy & Rice, *Privileges & Discovery: Part One—The Expanding Scope of Discovery,* 52 Tex.Bar J. 462 for a discussion of the "anticipation of litigation" standard. The supreme court has long held insufficient a mere allegation that a party conducted an investigation in anticipation of litigation. *Allen v. Humphreys,* 559 S.W.2d 798 (Tex.1977). Neither is the mere fact of an accident occurring sufficient to clothe an investigation with privilege. *Stringer v. Eleventh Court of Appeals,* 720 S.W.2d 801 (Tex. 1986). "Only information obtained after there is good cause to believe a suit will be filed or after the institution of a lawsuit is privileged." *Id.* at 802.

The supreme court gave some indication how "good cause" could be proved in *Turbodyne Corp. v. Heard,* 720 S.W.2d 802 (Tex.1986). The court held the party asserting privilege had failed to carry its burden of proving it had prepared documents in anticipation of litigation of a subrogation suit. Defendant's liability carrier hired experts who submitted affidavits stating they had good cause to believe, immediately after the accident, that the liability carrier and its insured would file a subrogation suit. The court noted, however, the affidavits did not affirmatively state the documents were prepared in connection with or in anticipation of a subrogation suit. *Id.* at 804.

Neither *Turbodyne* nor *Stringer* established a "brightline" test for determining when litigation is reasonably anticipated. No supreme court decision has offered further guidance since those two cases. Inter-

mediate courts have grappled with the problem since 1983. A number have adopted the approach the El Paso court articulated in *Phelps Dodge Refining Corp. v. Marsh,* 733 S.W.2d 359 (Tex.App. —El Paso 1987) (orig. proceeding). The El Paso court recognized the "anticipation of litigation" standard was amorphous. The court felt Rule 166b(3) would be meaningless if parties could invoke application of its privilege by a " 'generic' anticipation of suit based upon patterns of prior injuries and litigation." *Id. at* 360. It thus held that good cause to anticipate litigation would require some outward manifestations of future litigation by the potential plaintiff—such as retaining an attorney or hiring a private investigator. *Id.* at 361.

At least one court has ruled that the "outward manifestation" must be unequivocal. "We disagree that the mere hiring of an attorney by an injured worker automatically means the employer would necessarily anticipate litigation." *Morris v. Texas Employers Ins. Ass'n.,* 759 S.W.2d 14, 15 (Tex.App.—Corpus Christi 1988, no writ). The Austin Court of Appeals agrees. "The opposite extreme position is that work done after an attorney is retained is always privileged. This position wrongly assumes that every controversy results in litigation." *Wiley v. Williams,* 769 S.W.2d 715, 718 (Tex.App.—Austin 1989) (orig. proceeding).

Relator argues that the statements of the photographer as reported to the attorney by the investigator that the survivors had hired an attorney and bought photographs of the accident establish the relators had good cause to believe a lawsuit would be filed as a result of the accident and that the investigation was done in anticipation of litigation. Relators contend respondent abused his discretion in ordering discovery of the investigative materials.

Respondent ruled no documents were privileged if produced before March 15, 1983, the date Adeghite filed suit in federal court. Respondent may have noted, as we have, the absence of an affidavit of the professional photographer, the affidavit of

James Maloney of the law firm of Baker & Botts, and the affidavit of Douglas West, counsel for Toyota. Emmett Williams, an independent investigator, makes the only assertion of good cause to believe a lawsuit would ensue. No one directly asserts in an affidavit that the documents were prepared in connection with a suit by Adeghite. *See Turbodyne*, 720 S.W.2d at 804.

No single standard indicates in every situation when there is good cause to anticipate litigation. It is thus a judgment call ultimately made by the trial court. While certain events may be sufficient as a matter of law to establish good cause or lack thereof, we do not believe these circumstances are that certain. A trial court's action must be so arbitrary and unreasonable as to amount to a clear and prejudicial error of law. A mere error of judgment is not an abuse of discretion. *Loftin v. Martin*, —— S.W.2d ——, 32 Tex.Sup.Ct.J. 401 (May 27, 1989). Until the supreme court articulates more certain guidelines, we hesitate to hold a trial court has abused its discretion in making that judgment call.

The motion is overruled.

DRAUGHN, J., would grant.