**PHELPS DODGE REFINING CORPORATION, Relator,**

v.

**The Honorable Herb MARSH, Judge, 243rd Judicial District Court, El Paso County, Texas, Respondent.**

No. 08–87–00126–CV.

Court of Appeals of Texas, El Paso.

June 24, 1987.

Steven B. Tatem, Jr., Scott, Hulse, Marshall, Feuille, Finger & Thurmond, El Paso, for relator.

Raymond C. Caballero, Evelina Ortega, Norbert J. Garney, El Paso, for respondent.

Before OSBORN, C.J., and FULLER and WOODARD, JJ.

## OPINION

OSBORN, Chief Justice.

Relator seeks mandamus relief from a trial court ruling denying protective relief and ordering discovery of the results of an investigation conducted by Relator into the events giving rise to the lawsuit. Mary Ida Castellano brought suit individually and as next friend of her children against Relator for gross negligence in the wrongful death of her husband, Harvey Castellano. On July 2, 1986, Harvey Castellano was injured when a chain broke at Relator's refinery. He consulted a local doctor, returned

to work, was then admitted to Southwestern General Hospital and returned to work again. On the evening of August 7, he began to experience headaches. His wife drove him to the emergency room of the hospital. He lapsed into a coma and was pronounced brain dead. All life support was terminated on August 9. Relator learned of the death on August 11. Relator's personnel director, Dana Wray, sought advice from James McNutt, one of the company's attorneys. McNutt advised Wray to notify the OSHA office in Lubbock, to cooperate with any OSHA investigation and file the appropriate documents with the workers' compensation carrier. McNutt also advised Wray that a lawsuit against Relator was likely and that it would be desirable to interview the other members of the work crew working with Mr. Castellano at the time of the injury. Wray interviewed these individuals, asking specific questions suggested by McNutt and obtaining written statements.

Mrs. Castellano sought to depose Mr. Wray and sought production of the results of such internal investigation. Relator moved for a protective order. The matter was initially heard by the Honorable Edward Marquez, 65th Judicial District Court. Prior to ruling on the discovery question, the cause was transferred to Respondent's court. On May 14, 1987, Respondent denied the protective order and ruled that the investigation results were discoverable. The order does not recite the basis for the court's ruling. By prior letter to counsel dated May 6, 1987, the Respondent indicated that the documents were considered discoverable because the investigation was conducted prior to the filing of Mrs. Castellano's lawsuit.

Both sides rely upon the same case authority for their positions. As interpreted by the Texas Supreme Court in *Stringer v. Eleventh Court of Appeals*, 720 S.W.2d 801 (Tex.1986), and *Turbodyne Corporation v. Heard*, 720 S.W.2d 802 (Tex.1986), the privilege afforded post-accident investigations under Rule 166b(3)(d), Tex.R.Civ.P., is applicable if a suit has already been initiated *or* if there is *good cause* to believe suit will be filed. *Stringer*, at 802; *Turbo-*

*dyne,* at 804. *See also: Lindsey v. O'Neill,* 689 S.W.2d 400, 402 (Tex.1985). Relator is correct to the extent of relying upon these authorities for the proposition that the privilege may arise prior to the actual filing of the lawsuit. The thinking expressed in Respondent's letter of May 6 is erroneous in that regard. This letter, however, signed not by Respondent but by his court coordinator, does not rise to the level of findings of fact or conclusions of law. Given the extraordinary nature of mandamus relief, the Respondent's decision should not be overturned if the same result is proper upon other grounds.

The question then is whether or not Dana Wray had good cause to anticipate a lawsuit. A literal reading of Rule 166b(3)(d), Tex.R.Civ.P., would have necessitated the filing of a suit before the privilege would attach. This would deter timely and more meaningful investigation. Supreme Court interpretation liberalizing the rule to extend the privilege to investigations in contemplation of litigation reduces that undesirable practice, but opens the door to abusive invocation of speculative belief that a lawsuit will follow simply to foreclose discovery. The only viable middle ground enhancing the resolution of such conflicts is that provided by the requirement that the party invoking the privilege in advance of suit have good cause to believe that a suit will be filed. *See: Tucker v. Gayle,* 709 S.W.2d 247, 250 (Tex.App.—Houston [14th Dist.] 1986). The mere fact that an accident has occurred is not sufficient to establish good cause for anticipation of suit. *Stringer v. Eleventh Court of Appeals, supra.* To avoid rendering the rule meaningless, the same must be true of any "generic" anticipation of suit based upon patterns of prior injuries and litigation. There should be some circumstances associated with the specific case to suggest a suit will be filed, or is at least being contemplated. Otherwise, the subjective speculative fears of the defendant, or the tactically motivated predictions of his attorney, will dictate the parameters of discovery.

The cases relied upon by the parties do not define "good cause" as used in *Allen v. Humphreys*, 559 S.W.2d 798 (Tex.1977). In that case the court said:

[T]he results of a test or survey done after the institution of Mrs. Allen's suit or after Safeway or Charter Oak had good cause to believe such a suit would be filed would be privileged if the defendant could show the survey or test was made "in connection with the prosecution, investigation or defense of such claim or the circumstances out of which same has arisen."

█ We hold that "good cause" to believe a suit will be filed requires some outward manifestations of future litigation by the party having a cause of action which would include any injured person or, as in this case, statutory beneficiaries. Such manifestations could include commencing an investigation of the accident, retaining an attorney or private investigator and, of course, making a claim or demand for damages. A good faith belief, based on past experience, that a suit may be filed does not establish "good cause" so as to deny discovery where suit has not yet been filed.

█ Plaintiff asserts that the affidavit of James McNutt was not properly part of the record before the Respondent, and his advice or predictions as counsel should not have been considered by Respondent and should not be considered by this Court. We conclude that, even incorporating such affidavit, the result is the same. His professional prediction of the likelihood of suit was still of the generic order of anticipation, not rising to a level of good cause for Wray to believe suit would be filed. In *Turbodyne*, immediately after the accident, two experts employed by Travelers Insurance Company concluded that a subrogation suit should be filed. The Supreme Court rejected these expert speculations as good cause to invoke the investigative privilege. We conclude that in this case there was not good cause to anticipate this particular lawsuit. The foreman had already prepared one accident report even before McNutt was consulted. McNutt's advice also urged Wray to fully cooperate with the OSHA investigation, providing a separate and distinct motivation for Wray's investigation from that presently urged by Relator. Similar alternative investigative motivations were highlighted by the Supreme Court in *Turbodyne* and *Robinson v. Harkins & Company*, 711 S.W.2d 619 (Tex.1986). Without the actual filing of this suit and without good cause to anticipate this particular lawsuit, the privilege expressed in Rule 166b(3)(d), Tex.R.Civ.P., does not extend to Wray's investigation results.

Furthermore, mandamus will not be available in cases of disputed factual issues resolved by the lower court. While certain events may be sufficient as a matter of law to establish good cause or lack thereof, the facts in this case certainly do not rise to the level establishing good cause to anticipate suit as a matter of law. The credibility of Wray's testimony as to his motivation was a matter for determination by the fact-finding trial judge. As such, his conclusion should not be overturned through the vehicle of mandamus.

The petition for mandamus is hereby denied.