ENTERPRISE PRODUCTS
COMPANY, Relator,

v.

The Honorable Gary
SANDERSON, Respondent,

and

David G. and Wanda Ling, Real
Parties in Interest.

No. 09–88–008 CV.

Court of Appeals of Texas,
Beaumont.

Sept. 22, 1988.

W. James Kronzer, Houston, Michael Hendryx, Weitinger & Tucker, Houston, David W. Ledyard, Strong, Pipkin, Nelson & Bissell, Beaumont, Gail Jenkins, Benckenstein, Norvell, Bernsen & Nathan, Beaumont for relator.

Jimmy D. Hulett, Jr., Hulett, Roth & Williams, Beaumont, Michael R. McGown and Edward H. Green, Weller, Wheelus & Green, Beaumont, for respondent.

## OPINION

BROOKSHIRE, Justice.

A Petition for Writ of Mandamus.

In early 1988 Enterprise Products Company, Relator, petitioned this Ninth Court of Appeals for the issuance of a Writ of Mandamus to require the Honorable Gary Sanderson, Judge of the 60th Judicial District Court of Jefferson County, to vacate his order dated December 23, 1987. Judge Sanderson's order required the production of certain documents and items which he

deemed to be discoverable under the appropriate Texas Rules of Civil Procedure.

The district judge's order was made following a request for production filed by David G. Ling and wife, Wanda Ling, designated as the real parties in interest. Basically, Judge Sanderson, after examining the documents, the pleadings, and the affidavits, and hearing the arguments of able counsel, made certain findings of fact. He found that in essence *that the documents and items sought to be discovered had not been prepared in the actual anticipation of litigation.* He further found that Relator failed in its burden of proving that any of the documents or items submitted were privileged. The district judge ruled in effect that the Relator had failed in its burden to establish a valid, factual basis for demonstrating clearly that the documents and items were exempt from the discovery procedures at the pre-trial stage under the appropriate Texas Rules of Civil Procedure.

### A Statement of Some Background Facts

In mid-May of 1987 David G. Ling was an employee of Harvey Contractors. Ling was working at the Enterprise Products Company's facility. This facility was apparently either owned or leased and operated by Enterprise Products Company. Ling, with certain other employees, was in the act of replacing a certain valve. Suddenly an explosion occurred. The explosion is alleged to have caused Ling to be forced over the edge of a platform on which he was positioned for his task. Ling landed on the ground below and allegedly sustained a broken neck. David Ling avers that in reasonable medical probability he will remain a quadriplegic for virtually the balance of his natural life. Following the filing of litigation, Ling and wife sent their request for the production of considerable materials and related matters to the then-defendant Enterprise. Enterprise timely filed certain objections as well as answers. Enterprise also filed a Motion for Protective Order.

A hearing was docketed and held. Thereafter, the presiding judge concluded that pursuant to certain findings of fact, the documents and materials sought to be discovered had not been prepared in anticipation of actual litigation. One of the main thrusts of the Lings' position is that Judge Sanderson *did not abuse his discretion* in his order requiring the production of certain documents, materials and items; hence, the same are discoverable. Therefore, the Lings maintain that we should not vacate Judge Sanderson's order.

We conclude that the report from Bob McCormick dated June 18, 1987 (which was after the lawsuit was filed) which contained a brief summary of the statements that were transmitted in that report would be privileged as provided for under *TEX.R. CIV.P. 166b*, being protected from discovery under Rule 166b(3)(d), being a communication between an agent or representative to a party to a lawsuit which was made subsequent to the occurrence or the transaction upon which the litigation was based and also in defense of such litigation which had been filed. We have adhered to Rule 166b(3)(d) as written in December 1987. However, the copies of the actual statements accompanying the Bob McCormick report, we deem to be discoverable. Enterprise agrees that the pictures and photographs are discoverable and will be or have been produced for inspection and copying. Enterprise concedes relevant portions of the routine log or record that was kept day-in and day-out by the plant entrance guard are discoverable.

Furthermore, Relator Enterprise, states that it has a statement of David G. Ling which had been produced to Mr. Ling's attorneys immediately prior to the oral arguments before us. We conclude that the statements taken from the witnesses which were obtained prior to the date of the filing of the underlying lawsuit would be discoverable under this record on the following ground. One, that under this record it is not shown that the *trial judge abused his discretion by finding that these statements and materials were not taken or obtained in anticipation* of the defense of the claims made the basis of the later filed litigation. We reach this deci-

sion because of the cogent and compelling opinion of the Supreme Court of Texas in *Stringer v. The Eleventh Court of Appeals,* 720 S.W.2d 801 (Tex.1986) wherein the Court basically ruled in a pragmatic sense that until the lawsuit was filed, legitimate anticipation of litigation was burdensome and difficult to prove. In *Stringer,* two railroad engines had collided, being operated by different railroad companies. We will write more about *Stringer, supra,* hereinbelow.

■ The correspondence and notes of communication between Enterprise and its attorney or attorneys as well as its insurers, that were made after the date the underlying litigation was filed, we conclude are privileged and not subject to discovery and this holding would apply to later communications between the same parties regarding the progress of the lawsuit.

Concerning Paragraph IV in Enterprise Products Company's Motion for Protective Order, we suggest that the proper disposition concerning the Lings' request for production of documents relative to the maintenance of the production unit in question and of the said 200 unit prior to May 23rd, 1987—the date of the explosion—would be to have the Enterprise Products Company pull these documents, materials and items, being apparently mainly purchase orders and invoices for the year 1987 and also for the years prior to 1987 at its "off-site archives". When these relevant documents have been lifted up or pulled at the off-site archives or off-site boxes and so marked by Enterprise Products, then it will be the responsibility of the Lings and their attorneys to visit these off-site archives and copy the same. We suggest the cost of copying the same will be shared equally between the Lings and Enterprise Products. We also suggest the cost of pulling these relevant documents will be shared on an equal basis between the Lings and Enterprise Products. But these matters should be addressed and decided by the trial judge.

An affidavit was filed before the district judge by a Mr. Hendryx who was the attorney for Enterprise Products. Also, affidavits were filed by Frank Chapman, who was an employee of Enterprise Products Company and by Robert or Bob McCormick, who was an investigator who had been contacted soon after the explosion occurred by Chapman. Mr. Chapman was the Director of Claims for Enterprise Products. He was notified soon after this serious fire and explosion had occurred. Mr. Chapman immediately contacted Mr. Hendryx at home. Mr. Hendryx was recuperating from knee surgery and apparently had just been released from the hospital. Since Mr. Hendryx was physically unable to go to the scene, it was decided that Mr. Chapman would immediately go to the scene and conduct the investigation. Chapman then obtained the contract services of Mr. McCormick who quickly went to the scene.

We do not decide that the date of the actual filing of the underlying litigation is always the date before which there can never be actual, reasonable anticipation of litigation. We perceive the district judge found no outward manifestation of a suit being filed prior to its filing date. It was certainly the clear position of the Lings that there had not been any outward manifestation to occur at any time before the actual date of the filing of the suit in the courthouse. The attorney for the discovery motion stated:

"[A]nd we're not asking for anything that the defendants have or have any investigation they may have done from the time the suit was filed forward. All we want is what was done prior to suit being filed. So there were not outward manifestations made by the plaintiffs."

Furthermore, a compelling point is made, we think, by the attorney arguing for the discovery motion in that the affidavits that were provided to the trial court by Enterprise were signed in September of 1987 which was some three or four months after the fire and explosion. The counsel for Respondent/Real Parties takes the position that for these affidavits to have real efficacy, they should have been made out and signed at the time that the discovery and investigation were in progress. That is to

say, that the affidavits should have been made, signed and sworn to in May or early June of 1987. Again, we do not lay down any such hard and fast rule but we think this fact of the September affidavits gives considerable leeway and some rational, reasonable basis for the trial judge exercising his discretion as he did. Again, it is one indicium that the trial judge did not abuse his discretion.

The lawsuit was actually filed on June 12, 1987. We reform and modify certain paragraphs on page 2 of the trial judge's order of December 23, 1987 to read as follows:

1. A copy of any and all documents or reports prepared by any departmental personnel of Enterprise Products Company, Inc., or any other entity reflecting their analysis of what caused the ignition of the fire and explosion provided that they were prepared or obtained before June 12, 1987;

2. A true and correct copy of any and all statements which Enterprise Products Company, Inc., or anyone acting in its behalf has obtained from any persons regarding the accident made the basis of this lawsuit, provided, however, that the same were taken or obtained prior to June 12, 1987;

3. True and correct copies of any and all video tapes or audio tapes made by the Enterprise Products Company, Inc., or anyone acting in its behalf with regard to the accident made the basis of this suit, provided that the same were made, recorded, gotten or taped prior to June 12, 1987; and

4. All documents, tapes, and video and audio tapes that were produced to the district court for an in camera inspection, provided, however, that the provisions of the first three numbered paragraphs immediately above are to be fully observed.

We specifically affirm the trial court's ruling quoted as follows:

The Court further finds that Plaintiffs are not entitled to any documents, audio tapes or video tapes that were obtained after suit was filed on June 12, 1987.

It is therefore, ORDERED, that Enterprise Products Company, Inc., is not required to produce any items for inspection or copying that were made after June 12, 1987.

Texas Rules of Civil Procedure 166b(3) entitled "Exemptions" states:

"The following matters are not discoverable:

(a) the work product of an attorney;"

We adhere to Rule 166b(3)(a) as written in December 1987.

Nevertheless, we must conclude that Frank Chapman's investigation and Bob McCormick's investigation (performed before June 12, 1987) are not the work product of an attorney. Nor are these investigations protected from disclosure under the attorney-client privilege. Through no fault, the attorney contacted did not and could not conduct the investigations, although his advice and instructions were followed. The attorney was confined to his bed.

Although the case was decided by the Supreme Court of Texas in 1977, we think a landmark decision was *Allen v. Humphreys*, 559 S.W.2d 798 (Tex.1977). Justice Steakley wrote clearly and concisely for the court:

"Simply stated, this privilege can be invoked where three factors coexist: (1) the material sought to be discovered is either (a) a written statement by a nonexpert witness, (b) a written communication between agents, representatives, or employees of either party to the suit, or (c) written communications between any party and his agents, representatives, or their employees; (2) the statement or communication is made subsequent to the occurrence or transaction upon which the suit is based; and (3) the statement or communication is made in connection with the prosecution, investigation, or defense of the particular suit or in connection with the investigation of the particular circumstances out of which it arose."

A controlling case most certainly is *Stringer v. The Eleventh Court of Appeals,* 720 S.W.2d 801 (Tex.1986). In *Stringer* the Eleventh Court of Appeals found that information obtained in a post-accident investigation was privileged under Texas Rules of Civil Procedure 166b(3)(d) and the Eleventh Court reversed the trial court's discovery sanctions orders against the Atchison, Topeka and Santa Fe Railway Company. The Supreme Court in a per curiam opinion squarely held that the post-accident investigation and information was discoverable because it was not obtained at a time when Santa Fe Railway Company had good cause to believe that a lawsuit would be filed. In fact, *the Supreme Court held that the Eleventh Court of Appeals actually had abused its discretion in granting the mandamus relief. The salient and crucial facts were that the underlying lawsuit arose as a result of a collision between an Atchison, Topeka and Santa Fe Railway Company freight train and a Missouri–Pacific freight train in which R.D. Stringer, a head brakeman for the Santa Fe train, was killed. Mr. Stringer's wife, Vikki, filed suit against Sante Fe.* We quote from *Stringer:*

> "In *Robinson v. Harkins & Company,* 711 S.W.2d 619 ( [Tex.] 1986), we held the investigation privilege embodied in TEX. R.CIV.P. 166b(3)(d) is still governed by the rule established in *Allen v. Humphreys,* 559 S.W.2d 798 (Tex.1977). Only information obtained by a party after there is good cause to believe a suit will be filed or after the institution of a lawsuit is privileged."

In *Stringer, supra,* the per curiam opinion referred to *Robinson v. Harkins & Company,* 711 S.W.2d 619 (Tex.1986), reaffirming that the Court had held the investigation privilege embodied in Texas Rules of Civil Procedure 166b(3)(d) was still governed by the rule established in *Allen v. Humphreys,* 559 S.W.2d 798 (Tex.1977). The high Court held that only information obtained by a party after there *is good cause to believe that a suit will be filed or after the actual filing* of a lawsuit has a privileged status. The Court reasoned,

however, that the fact that a spectacular collision of two freight trains owned by different railroad companies with the death of a head brakeman had occurred, was not sufficient to clothe all post-accident investigations, which frequently uncover fresh evidence not obtainable through other sources, with the privilege of non-disclosure. This is a very strong ruling. It is glaringly clear, then, that the Supreme Court felt that even in the unusual fact situation wherein two different freight trains owned and operated by two different railroad companies had a collision, resulting in the death of a Sante Fe employee, that the Sante Fe Railway Company did not have good cause to believe that a suit "will be filed." *See Turbodyne Corp. v. Heard,* 720 S.W.2d 802 (Tex.1986). In *Turbodyne* —another per curiam opinion—the Court wrote:

> "Recently, in *Robinson v. Harkins & Company,* 711 S.W.2d 619 (Tex.1986), we held that the investigative privilege in Rule 166b(3)(d) is still governed by the rule announced in *Allen v. Humphreys,* 559 S.W.2d 798 (Tex.1977), that only documents prepared in connection with the prosecution or defense of the lawsuit in which discovery is sought will be protected. We decided that an investigator's report prepared in connection with a workers' compensation claim was discoverable in a later personal injury action. The reasoning in *Robinson* applies to this case. Documents prepared by Travelers in connection with settlement of its claim with its insured would not be protected from discovery in a later subrogation suit."

The Court held that the burden is on the party resisting discovery to prove that the evidence, information or investigation was either acquired, obtained or developed in the actual anticipation of litigation. *See, Lindsey v. O'Neill,* 689 S.W.2d 400 (Tex. 1985).

In *Phelps Dodge Refining Corp. v. Marsh,* 733 S.W.2d 359 (Tex.App.—El Paso 1987, no writ), the court held that good cause to believe that a lawsuit will be filed has *as a necessary prerequisite some*

*"outward manifestation"* of future litigation by the party claiming to have a cause of action. Such outward manifestations could encompass the injured person commencing an actual investigation of the occurrence or hiring an attorney to do so as well as actually making a formal claim or demand for damages. The El Paso Court wrote further:

"A good faith belief, based on past experience, that a suit may be filed does not establish 'good cause' *so as to deny discovery where suit has not yet been filed."* (emphasis added)

The El Paso Court further held, in substance, that without the actual filing of a lawsuit and without good cause to anticipate the particular lawsuit involved, then the privilege or exemptions set out in Rule 166b(3)(d), Texas Rule of Civil Procedure, did not extend to the investigation in question. Even an able attorney's prediction of the likelihood of a personal injury suit for damages was not an efficient "good cause" for believing that an actual suit would be filed. Hence, the employer's post-accident investigation that was conducted prior to the actual date of the filing of the lawsuit was discoverable. It is interesting to note that in *Phelps Dodge,* the suit was brought by the surviving widow, individually and as next friend of her children, based on gross negligence in the wrongful death of the husband and father, Harvey Castellano. Mr. Castellano was injured when a chain broke at Phelps Dodge's refinery. After consulting a local doctor, Mr. Castellano returned to his duties, but was then later admitted to a hospital. He returned to work a second time. The injury occurred on July 2, 1986. During the evening of August 7, 1986, he began to experience headaches. He was driven to the emergency room of the hospital where he lapsed into a coma and was thereafter pronounced to be "brain dead." Life support facilities were terminated on August 9th. The Relator, Phelps Dodge, learned of Mr. Castellano's death on August 11th, and the Relator's personnel director sought advice from an attorney. The attorney advised the personnel director to contact the OSHA office and to file appropriate documents with a certain worker's compensation insurance carrier. The attorney also advised that a lawsuit against the Relator was likely and hence, it would be desirable to interview the other members of the work crew that had been working with Mr. Castellano at the time of the event of the chain breaking with the resulting injury and death. This was done. Certain individuals were interviewed and specific questions which were actually suggested by the attorney were answered. Also obtained were written statements. Even so, all of these materials were discoverable, the El Paso Court held.

■ Of course, whether or not there is good cause to realistically believe that a lawsuit will be filed necessarily depends upon the relevant manifested, overt facts of a particular situation and should be decided using objective standards such as "outward manifestations." We think the "outward manifestations" test or concept has veritable, authentic merit. Using the "outward manifestations" rule will lead to a more uniform, objective standard—a trustworthy standard. *See Cherokee Steel Fabricators, Inc. v. Khoury,* 733 S.W.2d 563, 565 (Tex.App.—Tyler 1987), original proceeding.

From some of the language used in the affidavit marked Exhibit B by an investigator in this appeal, it is not absolutely clear as to whose employee Mr. David Ling was, and it is not clear as to what sort of a lawsuit, if any, could have been anticipated. Query: against whom would a lawsuit be filed? Query: under what theory would it be brought? Query: gross negligence, against whomever was the employer, a third-party action, a worker's compensation claim? These queries render the anticipation of actual litigation hazardous and uncertain.

■ The attorney advised Mr. Chapman that he, the attorney, could not go to the plant site and according to the attorney's affidavit, that Mr. Chapman should simply proceed with the investigation and perform the same and then keep the attorney informed. Again, we sanguinely hold that the attorney's work product exemption is

simply not applicable here. Mr. Chapman and Bob McCormick apparently started working on the investigation and the taking of statements from various persons sometime at or after 5:30 p.m. on May 23, 1987, the date of the fire and explosion at the Enterprise Mont Belvieu plant. Under this record, we simply cannot rule that the trial judge abused his discretion; therefore, we decide that our stay order of January 15, 1988, should be dissolved; it is so ordered. We deny the application for the writ of mandamus, affirming the order below, as modified by this opinion.

Our Texas Supreme Court, we think, sees discovery proceedings as a tool and a mandate necessary to the expeditious, efficient resolving of litigation by permitting the litigants to obtain a rather full knowledge of virtually all the relevant facts prior to the trial on the merits. *West v. Solito,* 563 S.W.2d 240 (Tex.1978). *TEX.R.CIV.P. 1,* entitled "Objective of Rules", *has persuasive weight here.* We quote from *Texaco Refining & Marketing v. Sanderson,* 739 S.W.2d 493 (Tex.App.—Beaumont 1987, no writ), at page 495:

> "The proper objective of rules of civil procedure is to obtain a just, fair, equitable and impartial adjudication of the rights of litigants under established principles of substantive law. To the end that this objective may be attained *with as great expedition and dispatch and at the least expense both to the litigants and to the state as may be practicable,* these rules shall be given a liberal construction." (Emphasis theirs)

The rules of discovery in effect in 1987 were designed to effectuate a fair contest with all the relevant, material facts disclosed to the fullest, practical degree. The Texas Supreme Court has acknowledged that a desirable goal of pretrial discovery was to discover the truth and the material facts in order that legal proceedings would be decided by all of the facts. A trial on the merits is no longer considered to be a game or contest similar to "blindman's buff". *Garcia v. Peeples,* 734 S.W.2d 343 (Tex.1987); *Jampole v. Touchy,* 673 S.W.2d 569 (Tex.1984).

Indeed, Justice Kilgarlin, writing in *Garcia, supra* held, at page 347:

> "Shared discovery is an effective means to insure full and fair disclosure. Parties subject to a number of suits concerning the same subject matter are forced to be consistent in their responses by the knowledge that their opponents can compare those responses. *See Buehler v. Whalen,* [70 Ill.2d 51, 15 Ill.Dec. 852,] 374 N.E.2d [460] at 467 [1977]; S. Baldwin, F. Hare, F. McGowan, *The Preparation of a Product Liability Case* Sec. 5.2.5 (1981)."

Shared discovery produces a system of judicial administration that is more efficient and the results of such a system are of a higher quality.

██ Paragraph "1)", on page 2, of the trial judge's December 23, 1987, Order is troublesome. That paragraph reads in part:

> "1) ... and *what safety procedures could be used in the future to prevent similar occurrences;*" (Emphasis added)

We conclude that safety procedures that could be used in the future to prevent similar occurrences would not lead to admissible evidence, based on allegations of negligence. Repairs, precautionary measures and safety measures, after an accident, are not admissible, ordinarily, on the issue of the negligence of the other party. This rule is based on reason and well-established public policy. 1A R. RAY, TEXAS LAW OF EVIDENCE CIVIL AND CRIMINAL Sec. 1151 (Texas Practice 3rd ed.). The 1986 Supplement by Jeremy Wicker provides the same basic rule concerning remedial measures.

However, the last sentence of *TEX.R. CIV.EVID. 407(a)* reads:

> "... Nothing in this rule shall preclude admissibility in products liability cases based on strict liability."

We recognize that the rights and rules under the discovery practice are broader than the rules concerning the admissibility of evidence. However, it is interesting and important to note, we think, that, in the

discussion of *Rule 407* in the 1986 Supplement by Wicker to 1A R. RAY, TEXAS LAW OF EVIDENCE CIVIL AND CRIMINAL, at page 74, we find this enlightening paragraph.

"In a civil case involving submitted issues of negligence and strict liability, the jury may have to be instructed that they may consider the evidence of subsequent remedial issues only as to the product claims. While this is easily done, the jury will most surely be confused by the limiting instruction and may even disregard it in frustration."

We think, however, that the restrictive dates set out in the trial judge's order will prevent the discovery of nondiscoverable matters. See and compare *Texaco Refining & Marketing v. Sanderson, supra.*

We propose a modification of the trial court's order of December 23, 1987, consistent with this opinion.

We direct and order that the trial court reconsider Paragraph IV of the Motion for Protective Order filed September 21, 1987, as to the method and cost of producing and copying the relevant documents. We see nothing wrong with sharing equally between the parties the costs of producing and copying these documents. But this whole matter of locating, producing and copying is to be addressed initially by the district judge.

Writ of Mandamus is denied.

DENIED.

BURGESS, Justice, concurring and dissenting.

I concur in the denial of the writ of mandamus.

I dissent to that portion of the majority opinion relating to the production of maintenance documents. If the matter was impliedly ruled upon in the trial court's order, then relator has not shown any abuse of discretion. If the matter was left unresolved, it seems highly inappropriate, in my opinion, for this intermediate appellate court to "suggest" to the trial court how the discovery should be accomplished and how the costs should be taxed. This is solely the function of a trial court and should be left to the trial judge without any "suggestions" from this court.

For the reasons herein expressed, I concur in part and dissent in part.