**ALLSTATE TEXAS LLOYDS, Relator,**

v.

**Honorable Derwood JOHNSON, Judge,
74th District Court, McLennan
County, Texas, Respondent.**

No. 10–89–229–CV.

Court of Appeals of Texas,
Waco.

Dec. 21, 1989.

Roger D. Higgins, Belinda A. Vrielink & Beth D. Bradley, Thompson, Coe, Cousins & Irons, Dallas, for relator.

Tom L. Ragland, Clark, Gorin, Ragland & Mangrum, Q.Z. Valentine, Waco, for respondent.

## OPINION

MEANS, Justice.

### I. FACTUAL BACKGROUND

Rebecca Hamilton's house burned to the ground on September 5, 1988. Her home was insured against fire loss by Allstate Texas Lloyds ("Allstate"). Ron O'Brien, Allstate's adjuster, investigated the fire beginning the next day and, after calling in expert assistance, concluded that the fire was the work of an arsonist.

On or about September 21, O'Brien communicated his findings to his employer along with his prediction that Hamilton would sue Allstate if it refused to pay her under the policy. He proved prophetic. Allstate formally denied Hamilton's claim on January 12, 1989, and, on June 19 Allstate was served with her citation. Allstate answered, asserting arson as a defense, and counterclaimed for the money it had previously paid the mortgagee.

Discovery began in July when Allstate served interrogatories and requests for production of documents on Hamilton. In turn, Hamilton "noticed" the deposition of Allstate for August 28. The notice, following Rule 201.4, directed Allstate to designate the person or persons to testify in its behalf and the matters upon which each person designated would testify. *See* TEX. R.CIV.P. 201.4.

Allstate produced O'Brien in response to Hamilton's deposition notice but not before it filed its objections to the duces tecum which came attached. Along with its objections Allstate filed a request for a protective order or, in the alternative, an in-camera inspection to determine the discoverability of the documents in question.

Allstate objected to three of the twelve categories of documents requested by Hamilton. It based its objections on attorney-client privilege, the privilege for attorney work product, the party communications privilege, and the privilege for witness statements.

At O'Brien's deposition, counsel for Allstate repeatedly objected to questions posed to him by Hamilton's counsel relating to what Allstate knew or what facts Allstate had in its possession. Further, she instructed O'Brien either to not answer or to limit his answers to matters of which he had personal knowledge or of which Allstate had knowledge prior to September 21, 1988, the date on which Allstate contends it first anticipated litigation would ensue.

Hamilton responded to Allstate's objections at O'Brien's deposition by filing a motion for sanctions. By it she asked the court to prohibit all further discovery of any kind by Allstate, to strike Allstate's pleadings, to render judgment by default, to charge Allstate with all discovery costs, and to require Allstate to pay her attorney's fees.

The court heard Hamilton's motion for sanctions simultaneously with Allstate's motion for a protective order. Hamilton's counsel read into the record portions of O'Brien's deposition to show the questions to which Allstate objected and the instructions from Allstate's counsel to O'Brien not to answer or to limit his answers. Allstate offered little in defense of its behavior at deposition—only a restatement by counsel of its position and rather global affidavit by Ron O'Brien supporting Allstate's position that its privileges under Rule 166b.3. attached on September 21.

At the conclusion of the hearing, the court denied Allstate's request for a protective order and refused to conduct an in-camera inspection of the contested documents. As sanctions for Allstate's deposition behavior, the court struck all of Allstate's pleadings, prohibited Allstate from engaging in any further discovery, and ordered Allstate to pay Hamilton the cost of O'Brien's deposition. Allstate is now before us requesting a writ of mandamus (1) directing the Honorable Derwood Johnson, Judge of the 74th Judicial District Court, to vacate his order granting Hamilton's motion for sanctions and (2) instructing him to grant Allstate's request for a protective order or to perform an in-camera inspection of the documents.

## II. DECISION

Allstate was allowed to file its petition for writ of mandamus in this court on the strength of assertions that it was the victim of abuse of discretion by the trial court, and that it was in danger of irremediable exposure of its privileged documents and communications. Since granting leave, our primary focus has been upon the nature and extent of Allstate's claims of privilege, how those claims were advanced, and whether and how the claimed privileges have been threatened with violation by Hamilton and the trial court.

To prevent forced disclosure of privileged communications and documents, we were prepared to grant mandamus even in the face of *Street v. Second Court of Appeals*, 715 S.W.2d 638 (Tex.1986), *Stringer v. Eleventh Court of Appeals*, 720 S.W.2d 801 (Tex.1986), and *Wal–Mart Stores, Inc v. Street*, 761 S.W.2d 587 (Tex.App.—Fort Worth 1988, mand. overr.), which together can be read to designate appeal as the exclusive remedy for a trial court's abuse of discretion in imposition of sanctions. We would have done so believing that the supreme court, in promulgating Rule 215 and in deciding *Street* and *Stringer*, did not intend to require that sanctions which are imposed in an abuse of discretion *and* which deny the sanctioned party discovery rights or expose privileged information, could *only* be challenged by the remedy—

inadequate in those situations—of appeal. *See* TEX.R.CIV.P. 215; *Cf. Jampole v. Touchy*, 673 S.W.2d 569, 576 (Tex.1984) (granting mandamus against improper denial of discovery); *Crane v. Tunks*, 160 Tex. 182, 328 S.W.2d 434, 439 (1959) (granting mandamus against improper exposure of privileged information).

However, after thorough examination of every exhibit and painstaking review of every brief, we deny the writ because we believe that the trial court did not abuse its discretion in sanctioning Allstate monetarily and by disallowing further discovery. Further, that if the court abused its discretion in striking Allstate's pleadings, an adequate remedy by appeal is available to it. Under these circumstances, neither is there any need to order the trial court to conduct an in-camera inspection of the contested documents.

## III. HOLDING

■ A writ of mandamus is not appropriate to correct alleged trial court error *pendente lite* unless, first, a clear abuse of discretion is shown and, second, there is no adequate remedy by appeal. *See Jampole v. Touchy*, 673 S.W.2d 569, 572–73 (Tex. 1984). The standard is no different where the alleged error concerns imposition of sanctions. *See Bosnich v. National Cellulose Corp.*, 676 S.W.2d 446, 447 (Tex.App. —Houston [1st Dist.] 1984, no writ). The test for abuse of discretion is whether the court acted without reference to any guiding rules and principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex.1985).

■ Our first inquiry must be, then, whether Judge Johnson clearly imposed his sanctions without reference to any guiding rules and principles. In doing so, we must keep in mind that the trial court has broad discretion to impose discovery sanctions, *see Gonzales v. Conoco, Inc.*, 722 S.W.2d 247, 249 (Tex.App.—San Antonio 1986, no writ), and the appellate court cannot substitute its judgment for that of the trial court. *See Ray v. Beene*, 721 S.W.2d 876, 879

(Tex.App.—Houston [1st Dist.] 1986, writ ref'd n.r.e.).

The primary guiding rule for the trial court in this case is Tex.R.Civ.P. 215.2.b. It provides, in relevant part:

> If ... a person designated under Rule ... 201–4 ... to testify on behalf of a party fails to comply with proper discovery requests ..., the court in which the action is pending may ... make such orders in regard to the failure as are just, and among others the following:
>
> (1) An order disallowing any further discovery of any kind ... by the disobedient party;
>
> (2) An order charging all or any portion of the expenses of discovery ... against the disobedient party ...
>
> (5) An order striking out pleadings....

Rule 215.2.b., then, requires the trial court to make orders that are "just" in response to a party's failure to comply with proper discovery requests. "Just" is defined as "Conforming to or consonant with, what is legal or lawful, legally right; Reasonable." BLACK'S LAW DICTIONARY 1001 (Revised 4th ed.1968). The rule itself makes such sanctions as were here imposed legal; therefore, the only concern is whether they were reasonable. *See Southern Pacific Transp. Co. v. Evans*, 590 S.W.2d 515, 518 (Tex.Civ.App.—Houston [1st Dist.] 1979, writ ref'd n.r.e.).

## A. FACTS

Allstate's behavior at the deposition of the person it designated to testify in its behalf was not pristine. Despite the fact that Hamilton gave exhaustive notice of the matters upon which she expected to question Allstate and despite her directive pursuant to Rule 201.4 that Allstate designate a person *or persons* to depose upon those topics, Allstate responded by designating only its investigator, Ron O'Brien, to testify in its behalf.

Then, when asked questions by Hamilton's counsel relating to what Allstate knew or what facts Allstate had, Allstate's counsel repeatedly objected on the basis of privilege, claiming that O'Brien could only know the answers to the questions by having conferred with counsel or having received communications protected from discovery by one or more subparagraphs of Tex.R.Civ.P. 166b.3.d. Allstate's counsel did not suggest an adjournment in order to produce others who could testify on the relevant matters about which Hamilton was inquiring, though at the beginning of the deposition she did offer to "work with [Hamilton] to produce whoever the individual might be who does have the answer."

Further, Allstate took a very advanced position, chronologically speaking, as to the date upon which its Rule 166b.3. privileges accrued or attached, that is, the date upon which it had good cause to believe litigation would ensue. Specifically, it claimed the privileges attached on September 21, 1988, just sixteen days after the fire. This, despite the fact that Allstate did not deny Hamilton's claim until over four months and she did not file suit against Allstate until over nine months after the fire. The only support for this early claim of privilege at the hearing on Hamilton's motion for sanctions was O'Brien's affidavit, which rather summarily concludes that litigation was likely based on his experience as an adjuster for Allstate. As a consequence, Allstate's counsel continuously instructed O'Brien at his deposition to testify only as to what he knew from personal knowledge at any time and as to what Allstate knew before September 21.

During the course of the deposition, Allstate's counsel also objected to and/or instructed O'Brien not to answer the following questions:

Q. All right, sir. Can you please give me the names, addresses, and telephone numbers of any persons known to Allstate who have knowledge of facts pertaining to the purchase, ownership, or use by Rebecca Hamilton of the accelerant that you claim was used?

MS. BRADLEY: Same objection. Calls for attorney work product, attorney-client communications, investigation and communications undertaken in anticipation of litigation.

....

MR. MANGRUM: Do you know if any experts have been hired by Allstate for the purpose of giving testimony in this cause?

MS. BRADLEY: Objection. Attorney-client privilege, work product. Don't answer.

Counsel for Allstate also instructed O'Brien not to respond to a question concerning when and how much in attorney's fees had been paid by Allstate in the case. That instruction came despite the fact that O'Brien had hired the firm representing Allstate and despite Hamilton's having a legitimate interest in knowing these facts due to Allstate's counterclaim for attorney's fees.

### B. LAW

When Hamilton served upon Allstate her notice of deposition, Allstate was required to do just what the notice and the rule require: produce one or more persons able to testify as to the matters which were described with reasonable particularity in the notice. *See* TEX.R.CIV.P. 200.2.b., 201.4. Allstate did not do so, and its offer to later produce others who might have the answers did not discharge its duty under the rule. Judge Johnson could reasonably have concluded that the failure to do so was cavalier or even in bad faith. We are in no position to disagree.

Judge Johnson could also have been disturbed by Allstate's position that O'Brien, having been alone designated to testify, could nevertheless withhold from discovery any fact of which he did not have personal knowledge or about which Allstate "knew" after September 21, 1988. He could fairly have feared that Allstate's position would undermine the ultimate purpose of discovery, which is to seek out the truth so that disputes may be decided by what the facts reveal, not by what facts are concealed. *See Jampole*, 673 S.W.2d at 573. Further, Allstate was not only a defendant in this case; until these sanctions were imposed, it was also a counterclaimant seeking judgment against Hamilton for $55,000. A plaintiff cannot use one hand to seek affirmative relief in court and with the other lower an iron curtain of silence against otherwise pertinent and proper questions which may have a bearing upon his right to maintain his action. *Ginsberg v. Fifth Court of Appeals*, 686 S.W.2d 105, 108 (Tex.1985). Judge Johnson was even within the bounds of reason if he inferred that Allstate was being purposely obtuse or even obstructive.

■ Allstate's contention that its investigative privileges under Rule 166b.3 attached on September 21 runs contrary to established case law. In *Flores v. The Fourth Court of Appeals*, 777 S.W.2d 38 (Tex.1989), the Supreme Court of Texas set out what triggers the commencement of the investigative privileges:

A two-prong analysis is required. The first prong requires an objective examination of the facts surrounding the investigation. Consideration should be given to outward manifestations which indicate litigation is imminent. The second prong utilizes a subjective approach. Did the party opposing discovery have a good faith belief that litigation would ensue? There cannot be good cause to believe a suit will be filed unless elements of both prongs are present. Looking at the totality of the circumstances surrounding the investigation, the trial court must then determine if the investigation was done in anticipation of litigation. Unless there is abuse of discretion, the trial court's ruling should not be disturbed.

*Id.* at 39–40. The mere fact that an accident has occurred is not sufficient to establish good cause for anticipation of suit. The same is true of any "generic" anticipation of suit based upon patterns of prior investigations and litigation. There should be some circumstances associated with the specific case to suggest a suit will be filed, or is at least being contemplated. *Phelps Dodge Ref. Corp. v. Marsh*, 733 S.W.2d 359, 361 (Tex.App.—El Paso 1987, orig. proceeding).

■ If Judge Johnson determined that Allstate had no good cause to believe, on September 21, that suit would be filed, he certainly was acting within the limits of his discretion. If he further concluded that

the date was so advanced as to suggest bad faith, he was not entirely unsupported by the evidence. After all, he had before him only the affidavit of O'Brien on the matter and no other testimony or affidavits indicating whether or not and when Hamilton commenced an investigation of the accident, retained an attorney or private investigator, or made a claim or demand for damages. *See id.* O'Brien's averments in his affidavit that suit was being threatened early on against Allstate by the mortgagee and by Allstate against any arsonist it could identify, do not help. The privilege against discovery can be invoked only where the communications sought to be protected were transmitted in connection with the prosecution or defense of the lawsuit in which the discovery is sought. *See Allen v. Humphreys,* 559 S.W.2d 798 (Tex. 1977).

■ Rule 166b.2.d specifically makes discoverable the identity and location of persons having knowledge of relevant facts and of any expert who is expected to be called as a witness. The plain language of that rule thus makes it clear that such information can never be protected from discovery. *See Giffin v. Smith,* 688 S.W.2d 112, 114 (Tex.1985). When Allstate objected to the request to O'Brien for the names, addresses, and telephone numbers of persons known to Allstate who had knowledge of relevant facts and later instructed him not to answer a properly-posed question about the hiring of experts, it violated the letter of the rule and the spirit of the discovery process.

■ The attorney-client privilege does not encompass such nonconfidential matters as the terms and conditions of an attorney's employment and the purpose for which an attorney has been engaged. Further, when a party asserts this or any other privilege, the burden is on him to show that the information sought is protected by the privilege. *See Borden, Inc. v. Valdez,* 773 S.W.2d 718, 720–21 (Tex.App.—Corpus Christi 1989, no writ). Allstate's knowledge of how much and when it had paid attorney's fees is, on its face, outside the privilege. Allstate presented nothing at the hearing to refute that notion.

If Judge Johnson faulted Allstate's refusal to disclose persons with knowledge of relevant facts, to respond about whether experts had been hired to testify, and to disclose its payment of attorney's fees, he was justified. All three constitute discovery abuse. *See* TEX.R.CIV.P. 166b.3.

Based on the evidence before Judge Johnson, his assessment against Allstate of the cost of O'Brien's deposition and his denial to Allstate of any further discovery were reasonable as well as just. They were therefore not an abuse of discretion.

■ We reserve a determination on the remaining and most severe sanction. The striking of pleadings is an extreme sanction which should not be imposed unless the failure to answer discovery requests is willful, in bad faith, or due to some fault of the disobedient party. *Assicurazioni Generali, S.p.A. v. Milsap,* 760 S.W.2d 314, 316 (Tex.App.—Texarkana 1988, writ denied). Further, the sanction imposed should be specifically related to the harm done by the condemned conduct. *Ray v. Beene,* 721 S.W.2d 876, 879 (Tex. App.—Houston [1st Dist.] 1986, writ ref'd n.r.e.)

■ We are not required to decide now whether the court abused its discretion by striking Allstate's pleadings because, even if it did, Allstate has an adequate remedy by appeal. *See Wal–Mart,* 761 S.W.2d at 589. If the sanction remains in place and the case is appealed, we will then have a better view of its impact and a better perspective from which to determine its justness, reasonableness, and severity.

Allstate also alleges that Judge Johnson abused his discretion when he refused to conduct an in-camera inspection of the documents it claimed were protected by privilege. If Judge Johnson's refusal was error, it has little or no consequence at this point. Allstate is under no motion to compel and is not in imminent danger of exposure of its documents. We are confident that in the unlikely event that Hamilton reasserts its demand for the documents,

Judge Johnson will conduct an in-camera inspection of them before determining their discoverability. *See generally Weisel Enterprises, Inc. v. Curry,* 718 S.W.2d 56 (Tex.1986); *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Hoffman,* 746 S.W.2d 305 (Tex.App.—Dallas 1988, orig. proceeding).

We deny Relator's petition for mandamus and dissolve the stay order which we have previously entered in this cause.