**AMERICAN HOME ASSURANCE COMPANY, Relator,**

v.

**The Honorable Herb COOPER, Judge, County Court at Law # 5, El Paso County, Texas, Respondent.**

**No. 08–89–00401–CV.**

Court of Appeals of Texas, El Paso.

Feb. 1, 1990.

Rehearing Overruled Feb. 28, 1990.

Stephan B. Tatem, Jr., Scott, Hulse, Marshall, Feuille, Finger & Thurmond, El Paso, for relator.

Kurt Paxson, Steven L. Hughes, Grambling & Mounce, El Paso, for respondent.

Before OSBORN, C.J., and WOODARD and KOEHLER, JJ.

## OPINION

KOEHLER, Justice.

American Home Assurance Company, Relator, seeks mandamus relief from a pretrial discovery order issued by the Respondent judge upon the overruling of Relator's motion for a protective order and the granting of a motion to compel in favor of Relator's opponent in the trial court. We decline to issue the writ.

The challenged order was issued in *American Home Assurance Company v. Nancy Ann Labbe Walker*, Andrew Maier Walker and *Argonaut Midwest Insurance Company*, Cause No. 87–3451, on the docket of Respondent's court. This is one of seven suits variously arising out of a collision in which defendant below, Nancy Walker, was injured and her husband was killed. The two were working as a truck driving team at the time of the accident. Workers' compensation claims were filed with the Industrial Accident Board (IAB)

for both Nancy Walker's disability arising from her personal injuries and for statutory death benefits due under her husband's coverage. A disputed issue immediately arose as to their employment status at the time of the accident: Were the Walkers independent contractors, employees of Bekins Van Lines (compensation coverage by Argonaut), employees of Electronic Data Carriers (a Bekins subsidiary covered by Relator) or employees of both companies?

The injuries and death occurred on May 16, 1985. The alleged employers were given timely notice of injury, and timely claims were filed with the IAB indicating the employer conflict and listing both companies. Electronic Data Carriers was contacted by telephone on May 28, 1985, by the attorney hired by Nancy Walker to pursue both claims. Electronic Data notified Relator, who in turn assigned the case to an independent adjusting firm, Crawford & Company. The case was specifically assigned to Crawford's claims adjuster in El Paso. On May 31, 1985, Walker's attorney sent a letter to Electronic Data confirming his representation of the Walker claims, requesting certain information and formally advising the company of the assertion that the Walkers were injured in the course and scope of employment. A copy of the letter was forwarded to the adjuster and included in his investigation file. A primary thrust of the adjuster's investigation was aimed at a determination of which company, if either, was the actual employer of the Walkers at the time of the accident. The adjuster was personally convinced that litigation would ensue and consulted outside legal counsel on the employer issue. The IAB was advised of the claims by a letter dated June 18, 1985 from Walker's attorney. This letter indicated the prospective conflict over the employer issue and identified both Bekins and Electronic Data as employers.

At the end of June 1985, Nancy Walker brought suit in the 55th District Court of Harris County against the driver involved in the collision. Relator intervened in that suit to preserve any subrogation right, con-

tingent upon the outcome of the compensation claims.

The IAB issued its award in the death benefits case on March 11, 1987, in which it found that Mr. Walker was employed by both companies and held Argonaut and Relator jointly and severally liable for the statutory death benefits accruing to his surviving wife and their minor son. Both carriers appealed the IAB decision. This mandamus arises out of the appeal by Relator. Of the other six suits arising out of the accident, the only one which has possible relevance to this mandamus is a civil suit by Nancy Walker, individually and on behalf of her husband's estate, against Argonaut, American Home, Bekins and Electronic Data, asserting violations of the DTPA and the Insurance Code by engaging in bad faith litigation of the compensation claim, filed and pending in the 41st District Court of El Paso County, Cause No. 87–4529.

■ As defendants in the appeal by Relator, the Walkers sought discovery of the adjuster's entire investigation file. Relator agreed to furnish any portions which were ultimately provided to the IAB or any health care providers, but otherwise resisted, claiming a privilege under Tex.R.Civ.P. 166b, subds. 3(a), 3(c) and 3(d). The "investigation in anticipation of litigation" privilege is asserted by relator for all materials generated after May 31, 1985, the date of the letter of Walker's attorney to Electronic Data. In support of its opposition to the discovery and claim of privilege, Relator submitted a lengthy affidavit of the claims adjuster setting forth in detail the factual background of the accident, his investigation and the reasons why his investigation file should be privileged. Walker responded to Relator's objections with motions for sanctions and to compel. Hearings on the discovery motions were conducted on October 5 and December 6, 1989. While the Relator made references at both hearings to a tender of its investigation file to the judge for an *in camera* examination for a determination of what portions might be privileged, the references were somewhat tentative and equivocal: "I have all of that

and I'm ready to tender it to you to look at, but clearly. . . ." "We would be willing to have an *in camera* inspection if Your Honor thought we needed to have one, but we don't think that is even necessary because we don't think the claim's [sic] file is discoverable. . . ." The option of an *in camera* examination was not further pursued by either party or by the trial judge. On December 7, 1989, the judge signed an order denying Relator's objection and claim of privilege and ordered it to produce its entire adjuster's file up to the filing date of its notice of intent to appeal the IAB award.

In discovery matters, a limited privilege from disclosure exists for certain investigatory materials, such as witness statements and communications between parties, made subsequent to the occurrence of the event giving rise to the lawsuit "and in anticipation of the prosecution or defense of the claims made a part of the pending litigation." Tex.R.Civ.P. 166b(3)(d). Any such investigation carried out after the commencement of litigation obviously would be privileged. However, the commencement and prosecution of a claim before the IAB does not, by itself, constitute litigation. *Flores v. Fourth Court of Appeals*, 777 S.W.2d 38, 40 (Tex.1989). A valid investigation privilege does not require the actual filing of a lawsuit, as long as good cause existed to believe that such suit would be filed. *Stringer v. Eleventh Court of Appeals*, 720 S.W.2d 801, 802 (Tex.1986); *Turbodyne Corporation v. Heard*, 720 S.W.2d 802, 804 (Tex.1986); *Phelps Dodge Refining Corporation v. Marsh*, 733 S.W.2d 359, 361 (Tex.App.—El Paso 1987, no writ). In determining whether good cause existed to anticipate litigation so that any investigation conducted from that time forward would be privileged, a two-part analysis is required: First, an objective examination of the outward manifestations which indicate litigation is imminent, and second, a subjective determination of whether the party resisting discovery had a good faith belief that litigation would follow. *Flores*, 777 S.W.2d at 40–44.

Past experiences or statistical probabilities arising from previous cases involving

similar claims, claimants or injuries does not amount to good cause. Commencement of an investigation by the party having the claim, retaining an attorney or private investigator or making a claim or demand for damages could provide the necessary manifestation. *Phelps Dodge,* 733 S.W.2d at 361. Under *Flores,* apparently, such manifestations when taken in conjunction with a worker's compensation claim prior to the notice of refusal to abide by the IAB award, are not in and of themselves sufficient. Among facts in this case not known to have been present in *Flores,* was the employment of an attorney by the Walkers shortly after the accident and prior to commencement of the compensation claim, the June 18, 1985 claims letter from the Walker's attorney to the IAB notifying the Board of a dispute over which of the two potential employers, and consequently their respective compensation carriers, was responsible at the time of the accident and the filing of a third party action in June 1985 in Harris County.

Relator argues that the filing by the Walkers of the third party suit in Harris County in June 1985, in which Relator intervened for subrogation purposes, was more than anticipatory of litigation. It was, in Relator's view, another outward manifestation of imminent litigation or actual litigation. Different causes of action arising out of the same incident do not necessarily produce parallel parameters of discovery and privilege. *See Motors Insurance Corporation v. Fashing,* 747 S.W.2d 13, 14 (Tex.App.—El Paso 1988, no writ). Notwithstanding the filing of the Harris County suit and the intervention by Relator, nothing in the present record indicates that the investigation material prepared by the adjuster was generated in connection with that suit. *See Turbodyne,* 720 S.W.2d at 804.

A trial court has broad discretionary powers when ruling on discovery matters and abuses that discretion only when it reaches a decision so arbitrary and unreasonable that it amounts to a clear and prejudicial error of law. Mandamus is only to be issued to correct a clear abuse of that discretion. *Johnson v. Fourth Court of Appeals,* 700 S.W.2d 916, 917 (Tex.1985). Our review of the totality of the outward manifestations present in this case brings us to the conclusion that under the *Flores* analysis, the trial court could have ruled either way within its broad discretionary powers and therefore did not issue an order that was "so arbitrary and unreasonable as to amount to a clear and prejudicial error of law." *Johnson,* 700 S.W.2d at 917.

■ We next consider whether the trial court abused its discretionary powers when it failed to make an *in camera* inspection of the file prior to issuing its order in accordance with the requirements of Tex.R. Civ.P. 166b(4). As we read the many recent "discovery" cases and the Rules of Civil Procedure, the burden is on the party who seeks to exclude records, documents or other matter from discovery to plead specifically the particular privilege or immunity relied upon. That party must then produce evidence in the form of affidavits or testimony in support of that claim at a hearing obtained at his request. *Peeples v. Honorable Fourth Supreme Judicial District,* 701 S.W.2d 635, 637 (Tex.1985). If the trial court concludes that the produced evidence is not sufficient to establish the privilege, the next step is for the Court to determine whether an *in camera* inspection of some or all of the requested material is necessary. Tex.R.Civ.P. 166b(4). While the rule seemingly shifts the burden to the court procedurally to take the initiative on the need for an *in camera* inspection, it continues to remain on the party seeking protection to request the inspection and make at least an offer to tender the material to the court. *Peeples,* 701 S.W.2d at 637; *National Union Fire Insurance Company of Pittsburgh, Pennsylvania v. Hoffman,* 746 S.W.2d 305, 310 (Tex.App.— Dallas 1988, no writ). Under *Insurance Company of North America v. Downey,* 765 S.W.2d 555, 558 (Tex.App.—Houston [14th Dist.] 1989, no writ), both a request for an *in camera* inspection and an actual tender of the discovery material to the trial court are required prior to a final determination. Other cases hold that along with the request for an *in camera* inspection, an

offer to produce the documents is a sufficient tender. *National Union,* 746 S.W.2d at 310; *Dyna Span Corporation v. Hoffman,* 754 S.W.2d 341, 344 (Tex.App.—Dallas 1988), granting of writ overturned in *Hoffman v. Fifth Court of Appeals,* 756 S.W.2d 723 (Tex.1988), on the narrow ground that the relator did not claim a specific immunity or privilege. We conclude that an offer to produce should be a sufficient tender for the reason that in many cases, an actual tender would be impractical and burdensome until it is known what documents, if any, the court is willing to inspect. However, an *in camera* examination is not required in every case even though requested and a sufficient offer to tender made. *National Union,* 746 S.W.2d at 310.

The Relator in this case made a sufficient request for an *in camera* inspection and a sufficient offer to produce all of the requested discovery material if the trial court was otherwise disposed to make the inspection. We can only surmise from the record that the trial court must have concluded that the adjuster's affidavit was not enough to establish a general 166b(3) privilege in light of *Flores,* and that an inspection of the adjuster's file would serve no useful purpose. Since the Relator did not claim that certain documents or portions of documents within the file were privileged under a specific rule, we cannot say that an *in camera* inspection of the entire file was necessary. We hold that it was not an abuse of discretion for the court to fail or refuse to conduct such an inspection.

Under these circumstances, we deny the petition for writ of mandamus.

OSBORN, Chief Justice, concurring.

This Court in *Phelps Dodge Refining Corporation v. Marsh,* 733 S.W.2d 359, 361 (Tex.App.—El Paso 1987), attempted, for the first time in this State, to set some guidelines by which a trial court could realistically determine whether a party had good cause to anticipate a lawsuit. We said:

Such manifestations could include commencing an investigation of the accident, retaining an attorney or private investigator and, of course, making a claim or demand for damages.

The court rejected a good faith belief, based on past experience.

That standard, whether right or wrong, did receive some acceptance. *Texaco Refining & Marketing, Inc. v. Sanderson,* 739 S.W.2d 493 (Tex.App.—Beaumont 1987); *H. E. Butt Grocery Company v. Williams,* 751 S.W.2d 554 (Tex.App.—San Antonio 1988); *Mole v. Millard,* 762 S.W.2d 251 (Tex.App.—Houston [1st Dist.] 1988); *Enterprise Products Company v. Sanderson,* 759 S.W.2d 174 (Tex.App.—Beaumont 1988). *Contra: Toyota Motor Sales, U.S.A., Inc. v. Heard,* 774 S.W.2d 316 (Tex.App.—Houston [14th Dist.] 1989).

In *Flores v. Fourth Court of Appeals,* 777 S.W.2d 38 (Tex.1989), the Court held that filing a claim with the Industrial Accident Board was not a basis for good cause to anticipate litigation and thus discovery was permitted. Tex.R.Civ.P. 166b(3)(d) provides exemptions for party communications and includes communications made subsequent to the occurrence or transaction upon which the suit is based, and IN ANTICIPATION of the prosecution or defense of the claims made a part of the pending litigation. (Emphasis added). In the *Flores* case, the city made the tactical mistake of contending that a claim before the Board constituted litigation. What would have been the results had the contention been that the claim before the Board was only a step toward litigation in a trial court? Probably the same. I believe the better rule would continue to be that investigation after a claim is made, whether by a telephone call seeking damages, letter from an attorney, a filing with the IAB, or however, is privileged, not because a claim is litigation, but because the investigation after the claim is made is in anticipation of litigation. Certainly, most claims before the Board do not end up in a trial court, but there is no other way to get to the trial court and to believe that work done at that stage cannot be in anticipation of litigation makes little sense. The Court in *Flores* did not and probably did not need

to mention the decision in the *Marsh* case, but the net effect of its holding is to reject the standard set for a realistic determination of good cause in that case.

But, this will all come to naught, because we will soon realize that at the present rate and cost of discovery, "trial by ambush" was not so bad after all.