Garza, C. et al v Hon Bournias 






PETITION FOR WRIT OF MANDAMUS GRANTED
MAY 17, 1990

NO. 10-90-027-CV

IN THE
COURT OF APPEALS
FOR THE
TENTH DISTRICT OF TEXAS
AT WACO

* * * * * * * * * * * * *

COLLASTICA GARZA, INDIVIDUALLY, AS REPRESENTATIVE
OF THE ESTATE OF SARAGOSA GARZA, DECEASED, ET AL,

   Relators
v.

THE HONORABLE SAM BOURNIAS, JUDGE, 87TH DISTRICT
COURT, LIMESTONE COUNTY, TEXAS,
   Respondent

* * * * * * * * * * * * *

Original Proceeding

* * * * * * * * * * * * *

O P I N I O N

* * * * * * *
This is an original mandamus proceeding. Relators Collastica
Garza, individually, and as representative of the Estate of
Saragosa Garza, deceased, and as representative of the wrongful
death beneficiaries of the deceased, and others, who are plaintiffs
in a medical malpractice action in the trial court, seek to compel
the honorable Sam Bournias, presiding judge of the 87th Judicial
District Court of Limestone County, to vacate his February 2, 1990,
order entered in cause 220007-B compelling Plaintiffs to produce
for defendant Robert J. Neff, M.D., a copy of Dr. Paul Blaylock's
letter to Plaintiffs' counsel dated August 15, 1989. Relators
request that a writ of mandamus issue commanding Judge Bournias to
rescind his February 2nd order and to enter an order protecting the
correspondence in question from discovery under the attorney work-product exemption or, alternatively, to rescind said order, review
the subject correspondence and order those portions containing
information protected by the work-product privilege "blacked out
before" a photocopy is provided to defendant Neff. 
The letter in issue consists of a list of suggested deposition
questions compiled by Dr. Blaylock at the request of Relators'
attorney to assist the attorney in preparing for the deposition of
Dr. Neff. Relators assert as the basis for the relief they are
seeking, in addition to the work-product exemption, that the
correspondence sought is outside the allowed scope of discovery and
that the release of such material would provide Neff with an unfair
advantage. We conditionally grant the writ.
In response to defendant Neff's first request for production
to the plaintiffs, Relators produced a photocopy of the only
written report they had received at that point from Dr. Paul
Blaylock, one of their designated testifying experts. Blaylock's
report was in the form of a letter to Relators' attorney dated
October 29, 1987. Neff's request for production #4 requested the
following:
All reports, notes, conclusions, opinions, telephone
memoranda, or the like, preliminary or otherwise, of any
testifying expert witness, with regard to the incident
giving rise to the above-referenced action or with regard
to the acts or omissions of the party propounding this
request for production, whether favorable or unfavorable.
Dr. Blaylock's October 29th report indicated that, after
reviewing the material furnished to him by Relators' attorney, it
was his professional opinion that both the emergency room
physician, Dr. Neff, and the "first" hospital, General Mexia
Memorial, were negligent in the management of Mr. Garza's case. 
Blaylock then listed the specific acts of negligence on the part of
Neff, the emergency room physician, and Mexia General:
1.Suspected abdomen internal injuries, but failed to
type and crossmatch blood immediately after
arrival;
 
2.Failure to perform peritoneal lavage correctly;
 
3.Failure to give blood in timely manner and of
sufficient amounts to prevent the patient from
bleeding to death;
 
4.Should not have transferred patient to Waco
hospital 44 miles away;
 
5.Should have done an ultrasound and/or scan for
ruptured spleen;
 
6.If did transfer, should have stabilized patient
more, given blood sooner, and sent more blood to be
given to patient enroute;
 
7.If did transfer, should have been by air rather
than ground ambulance.
     
8.Should have had better communications with the
receiving hospital and have had them more prepared
to address the critical state of the patient;
 
9.They charged for a suture tray. If they sutured
the patient while he had more serious injury, such
an action is negligent prioritizing.
 
10.Patient had O+ blood type. They should have been
giving uncrossmatched blood to counter the life-threatening shock;
 
11.They did not do orthostatic BP and pulse checks;
 
12.Should have consulted a staff surgeon and taken
patient to surgery at first hospital;
 
13.Patient arrived at hospital at 7:19 p.m. and
transferred to another hospital at 11:45 p.m.
allowing critical time to pass without adequate
assessment and treatment in the interim;
 
14.Inadequate hospital procedures and protocol for
emergency care on weekends;
 
15.Shipped patient in a moribund state knowing that
the probability of death was imminent;
 
16.Failure to order abdomen films and pelvic films and
do ultrasound and CT scan to aid in diagnosis.
 
17.Should have placed a CVP line (or other central
line) in patient who is in shock.
The above-listed acts and omissions were also set forth in
Relators' responses to General Mexia Memorial Hospital's first set
of interrogatories submitted to Relators. A copy of these
responses was furnished to Neff in February, 1989. 
As to the "second" hospital, Hillcrest Baptist Medical Center, 
Blaylock further stated in his report that they, too, were probably
negligent but that the damage had been done prior to Hillcrest's
involvement and that it is doubtful that Mr. Garza would have
survived even if Hillcrest's resuscitation efforts had met the
applicable standards. Blaylock then listed eight acts or omissions
which in his opinion constituted negligence on the part of
Hillcrest. Blaylock suggested in his October 29th report that
Hillcrest as well as the ER physician, Dr. Neff, be added as
defendants, as he believed sufficient grounds of negligence existed
to prevent a suit against Hillcrest and the ER physician from being
dismissed as frivolous. Blaylock's October 29th report was
prepared on his professional letterhead, which reflects that
Blaylock is an attorney as well as a physician. 
On September 13, 1989, Relators served on all defendants their
supplemental response to all of the defendants' requests for
production, including a copy of Dr. Blaylock's written narrative
report dated May 16, 1989, which was prepared in the same form as
his October 29th report to Relators' attorney. Blaylock's May 16th
report reflects that he had reviewed the new materials sent to him
by Relators' attorney which had led him to conclude that:
1.Mexia Hospital, based upon the surgical privileges
applied for, had the surgical capabilities to do
trauma laparotomies and repair of a damaged spleen 
and/or liver from intra-abdominal bleeding.
 
2.The Care Flight Availability to the Mexia Hospital
was readily available and, if used properly in the
Garza case, more probably than not, would have
saved the life of Mr. Garza if the Mexia Hospital
physicians had elected to prevent Garza from
bleeding to death.
Defendant Mexia Hospital sent a second request for production
to Relators on November 22, 1989. Request number one asked that
Relators produce the following:
Any and all reports prepared after May 16, 1989 by
the following experts who may be called as a witness
regarding the incident or occasion in question, any
injuries or damages claimed to have been sustained as a
result thereof, or any other matter of fact upon which
the alleged claims are based.
Dr. Blaylock's name was then listed, along with the names of
two other experts previously designated by Relators.
Relators' response and objections to Mexia Hospital's request
identified Blaylock's August 15, 1989, letter to Relators' attorney
as being the only "report" prepared after the designated May 16th
date by any of the named experts. Relators' response indicated
that their attorney had asked Dr. Blaylock to prepare a list of
questions to ask during certain depositions, and the August 15th
letter consists of proposed deposition questions to Dr. Neff. 
Relators objected to producing the letter on the basis of the work-product exemption, Rule 166b(3)(a) of the Texas Rules of Civil
Procedure. Relators attached to their response and objection an
affidavit of Relators' attorney and a photocopy of the letter in a
sealed envelope for the court's in camera inspection. Neff's
attorneys were furnished a copy of counsel's affidavit, which read
in pertinent part:
2.In preparing to take certain depositions, and in
order to plan strategy in the taking of said
depositions, I personally contacted Paul Blaylock,
M.D. and requested that he prepare a list of
questions to be asked during said depositions. 
Paul Blaylock, M.D. wrote a letter to me dated
August 15, 1989 in which he listed such questions. 
A true and correct photocopy, or duplicate, of said
letter is attached hereto and adopted by reference
herein as if fully copied and set forth at length. 
In my opinion, said letter clearly constitutes
attorney work product.

Relators' response went on to state that proper preparation of
the case requires that their attorney gather information,
distinguish relevant from irrelevant facts, prepare legal theories
and plan strategy without undue and needless interference. 
Relators' attorney explained that he requested the questions
contained in Blaylock's letter in an effort to devise strategy and
that such strategy is actually reflected in the letter, thus making
the letter exempt from discovery as work-product.
Neff moved to compel production of the letter, arguing that
the letter is not work-product of counsel, that it contains the
facts known by as well as mental impressions and opinions of
plaintiffs' testifying expert which are discoverable under Rule
166b(e), and that once Relators designated Blaylock as a testifying
expert, any work-product privilege with respect to Blaylock's
letters, memoranda and other documentation and communication 
pertaining to this litigation had been waived. Neff pointed out
that other reports of Blaylock had already been produced and
Relators could not hope to shield other documents prepared by
Blaylock under the guise of work-product. Neff suggested that if
Relators desired to use Blaylock purely as a consultant, they
should not have designated him as a testifying expert. Neff
maintained that the letter containing information relevant for
impeachment and/or examination related to Blaylock's basic opinions
in the case. 
Relators' response to the motion to compel consisted of
generally the same arguments they make in this court to demonstrate
their entitlement to the issuance of a writ of mandamus,
accompanied by the affidavit of Dr. Blaylock, which read in
pertinent part:
2.I was first contacted regarding the health care
involved in the above-referenced lawsuit regarding
the possibility that I would review said health
care and render my medical opinions regarding said
health care in September 1987. I reviewed said
health care and agreed to testify as to my medical
opinions regarding said health care. I have never
been asked to testify as to any of my legal
opinions.
 
3.I am licensed as both a physician and attorney.
 
4.I was asked by Randal Kauffman to prepare a list of
suggested questions for Mr. Kauffman to ask Robert
J. Neff, M.D. during his deposition. I prepared
such a list of questions contained in a letter to
Mr. Kauffman dated August 15, 1989. Said letter
does not contain any of my medical opinions.

  Following a hearing on the motion to compel and an in camera
review by the court of the subject correspondence, the court
announced that the letter in question was discoverable and entered
the February 2nd order compelling production of Blaylock's August
15th letter. Relators take the position that they were not
required to supplement Neff's discovery requests with the letter in
question and therefore can not now be compelled to produce it. 
They interpret Rule 166b(6) to require supplementation in only
three instances: (1) when the response was incorrect or incomplete
when made; (2) when the response, though correct and complete when
made, is no longer true and complete and the circumstances are such
that failure to amend would be misleading; and (3) when the
identity or subject matter of a testifying expert witness's
testimony has not been disclosed in response to a discovery request
directly addressed to such matters. Relators contend that their
response to Neff's request for production number 4 was correct and
complete when they tendered Blaylock's October 29th report. 
Moreover, Neff has sought to compel production of a letter
identified by Relators in response to discovery submitted to them
by the Mexia hospital, who did not formally move to compel
production of the letter but did join in Neff's motion to compel at
the hearing. Thus, Relators argue that, as to Neff, Neff's
discovery requests and Relators' responses to those requests is
the only discovery actually relevant and, therefore, production of
the letter under these circumstances cannot be compelled.
Relators additionally assert that not providing Neff with a
copy of the August 15th letter can in no way mislead Neff, as
Relators have furnished him with copies of three written narrative
reports from Blaylock which clearly contain the mental impressions
or opinions of Blaylock and that the letter in question contains no
opinions or mental impressions which differ from those reflected in
the written reports already in their possession. The third report
to which Relators refer consists of a letter dated March 22, 1989,
from Blaylock to Relators' attorney in which Blaylock lists the
acts and omissions of the ambulance company, the emergency medical
technicians and attendants which in his opinion constitute
negligence.
Relators also point to the fact that their responses to Neff's
first set of interrogatories, Nos. 26 and 27, which had been
provided to Neff prior to his filing of the motion to compel,
thoroughly detail the subject matter of Blaylock's testimony. 
Relators' responses to those interrogatories, which inquired about
testifying experts' written reports, discussions with said experts
on Relators' behalf and the subject matter about which such experts
were expected to testify, included the identification of Dr. Paul
Blaylock and were accompanied by a copy of Blaylock's written
report dated October 29, 1987. Relators described the subject
matter of Blaylock's testimony as follows:
The subject matter on which Dr. Blaylock is expected
to testify includes, but is not limited to, liability,
negligence, causation, damages, and the medical care and
treatment of Saragoza Garza received from the General
Mexia Memorial Hospital, Robert J. Neff, M.D., Hillcrest
Baptist Medical Center, Hillcrest Emergency Physicians,
and other physicians at the time in question. A detailed
opinion from Dr. Blaylock may be found in his written
report attached as Exhibit "F" to Plaintiffs' Response to
Defendant's First Request for Production to Plaintiffs.
Relators' supplemental answer to interrogatory 27 contained
the following list of areas about which Dr. Blaylock could be
expected to testify:
(i)His own qualifications as an expert;
 
    (ii)The standard of care in this case;
 
   (iii)The conduct required of the physicians and
health care providers under the circumstances
involved in this case;
 
    (iv)The negligence of Defendants;
 
     (v)The injuries and damages proximately caused,
in terms of reasonable medical probability,
by Defendants' negligence;
 
    (vi)Decedent's physical pain and suffering;
 
   (vii)Decedent's mental anguish;
 
  (viii)The necessity of medical services provided 
decedent;
 
    (ix)The reasonableness of the cost of the medical 
services provided decedent;
 
     (x)Decedent's physical disability;
 
    (xi)Decedent's physical disfigurement; and
 
   (xii)Defendants' deviations from the reasonable
standard of care.
Relators further contend that the letter in question is
outside the permissible scope of discovery as defined by Rule 166b
of the Texas Rules of Civil Procedure. Relators take the position
that a party is entitled to obtain discovery of only those
documents and tangible things that were "prepared by an expert or
for an expert in anticipation of the expert's trial and deposition
testimony." Tex. R. Civ. P. 166b(2)e(2) (Vernon 1990) (emphasis
added by Relators). Relators aver that the subject correspondence
was not prepared by Blaylock in anticipation of Blaylock's own
deposition or trial testimony but rather, as is apparent, in
anticipation of Dr. Neff's testimony. 
Relators also assert as a basis for their alleged entitlement
to a writ of mandamus that Blaylock's proposed list of deposition
questions contains no discoverable mental impressions or opinions
of Blaylock. Id. at 166b(2)e(1). Relators interpret Rule
166b(2)e(1) as limiting the discoverable mental impressions and
opinions of a testifying expert and the facts which relate to or
form the basis for such impressions and opinions to only those
which are relevant because they pertain to the subject matter "on
which the witness is expected to testify." See id.; Fed. R. Civ.
P. 26(b)(4). Relators emphasize that the attorney for Neff
cancelled Neff's deposition which had previously been scheduled for
February 14 and acknowledged that the list of questions contained
in the letter would only be useful to him if obtained prior to
Neff's deposition, not the deposition of Dr. Blaylock.
Relators have invoked and continue to rely upon the work-
product exemption to protect the letter in question from discovery
by Neff. Tex. R. Civ. P. 166b(3)(a) (Vernon 1990). Relators
assert that in order for an attorney to advocate and protect the
interests of his client, he must be able to prepare his case,
necessarily including assembling information and planning strategy,
with a certain degree of privacy and free from unnecessary
intrusion by the opposing side. Relators contend that, in
requesting Blaylock to prepare a list of suggested questions to
pose to Neff during his deposition, it was clearly counsel's
purpose to plan strategy for Neff's deposition, which strategy is
contained in the August 15th letter. The letter thus constitutes
attorney work-product, even though prepared by one of Relators'
agents in anticipation of litigation. See United States v. Nobles,
422 U.S. 225, 238-39, 95 S.Ct. 2160, 2170, 45 L.Ed.2d 141 (1975). 
     Relators further point out that attorneys commonly discuss
with their experts questions to be asked the opposing party, their
witnesses and experts, as well as other case strategy. If the
opposing parties have sufficient information concerning an expert's
impressions and opinions on matters about which the expert may
testify, having to disclose such strategy constitutes improper and
unwarranted interference with necessary case preparation.
Finally, Relators argue that an expert may be used both to
testify and for consulting purposes. Specifically, they assert
that the facts known or opinions held by an expert retained or
specially employed by another party in anticipation of litigation
or preparation for trial and not expected to be called to testify
may be discovered in a situation as present in this case only upon
a showing of exceptional circumstances making it impractical for
the party seeking discovery to obtain facts and opinions on the
same topic by other means, citing Rule 26(b)(4) of the Federal
Rules of Civil Procedure and cases referenced thereunder. In
addition, Relators take the position that information and materials
obtained from such an expert bearing upon those matters in which
the expert serves as a consultant constitute attorney work-product
and fall within the recognized exemption as long as a clear
distinction is maintained between materials concerning matters upon
which the expert may testify and those materials pertaining to
those matters in which the expert served strictly as a consultant. 
Relators assert that they have preserved the requisite distinction,
having furnished to the defendants the previously-described
narrative reports of Dr. Blaylock of October 29, 1987, March 22,
1989, and May 16, 1989. Relators conclude by pointing out the
obvious economic consequences of being prevented from consulting
with one's own retained expert as a routine part of devising
strategy and being compelled to retain still another expert
directly for purposes of consultation out of concern that one's
indispensable case preparation and strategy might otherwise be
subject to discovery by the opposing party. 
Neff as real-party-in-interest relies upon the policy of broad
discovery generally endorsed in Texas as well as the plain language
of Rule 166b(e), which allows discovery of mental impressions held
by an expert "which relate to or form the basis of the mental
impressions and opinions" that will be expressed by the testifying
expert. Tex. R. Civ. P. 166b(e)(1). Neff takes the position that
the letter in issue and the questions listed therein necessarily
reflect Blaylock's mental impressions, albeit in question form, of
what he believes to be the material medical issues in this case and
that Neff's answers to these questions will undoubtedly lead to or
form the basis of Blaylock's ultimate opinions. Neff additionally
asserts his entitlement to discover all of Dr. Blaylock's mental
impressions, regardless of form, in order to test the credibility
and accuracy of Blaylock's testimony. Neff also argues that the
work-product exemption does not apply to shield the work-product of
a testifying expert made by that expert when acting in the capacity
of a consultant, as Texas does not favor dual-capacity witnesses. 
Finally, Neff emphasizes that, "[i]f for nothing else, Defendant is
entitled to discover the subject letter to expose Dr. Blaylock's
bias as a testifying expert." 
The work-product doctrine as embodied in Rule 166b(3)(a) was
designed to enable an attorney to take the necessary steps to
adequately work up his client's case without fear of being
compelled to disclose the "fruits of his labor" to his adversary. 
Texas Rules of Evidence Handbook, 20 Hous. L. Rev. 1, 285 (1983). 
In fulfilling his responsibilities and obligations to his client,
it is essential that an attorney be assured of a certain amount of
privacy in performing his duties, as reflected in interviews,
memoranda, correspondence and other numerous forms. To decide
which of the above is discoverable based upon the fallacious
distinction of who actually wrote the document in question, the
attorney or his agent, would result in much of what is now reduced
to writing remaining unwritten and lead to "inefficiency,
unfairness and sharp practices . . . ." Hickman v. Taylor, 329
U.S. 495, 511, 67 S.Ct. 385, 393-94, 91 L.Ed. 451 (1947). 
Moreover, this is not a case in which the document sought
contains information essential to the preparation of Neff's case
and without which Neff will be totally unable to defend against
Relators' claims. See Jampole v. Touchy, 673 S.W.2d 569, 575-76
(Tex. 1984). To the contrary, it is clear from the fact of the
cancellation of Neff's deposition at the request of his attorney
that Neff desires to use the questions to gain an advantage in
preparing for his own deposition. Neff will undoubtedly discover
most, if not all, of Blaylock's proposed questions at the time of
Neff's deposition and most of which he will likely have
anticipated. Neff does not dispute that Relators met their burden
in the trial court to assert and prove the privilege. In addition,
Neff has failed to demonstrate a justifiable basis for such a
needless intrusion into opposing counsel's files. Protecting
materials prepared by an attorney's agent in preparation for the
trial is quite practical in view of the fact that attorneys must
often rely on the assistance of investigators and other agents in
working up a complex case and in educating themselves in the
technical aspects of a complicated case requiring specialized
expertise. In light of the above, the protection given by the
work-product exemption to an agent's communications to his
employee-attorney is at least as extensive as that afforded
communications to an attorney's agent by the attorney-client
privilege--the work product exemption being broader than the
attorney-client privilege. See Bearden v. Boone, 693 S.W.2d 25, 28
(Tex. App.-Amarillo 1985, orig. proceeding). If Neff believes that
Blaylock's three reports with which he has been furnished do not
reflect all of Blaylock's mental impressions and opinions
formulated in connection with this case, he has the option of
deposing Blaylock and thus avoiding an unwarranted invasion of
counsel's file and the work-product exemption. Counsel for
Blaylock assured the court at the hearing on the motion to compel
that Blaylock's deposition would be taken.
Although the work-product exemption is generally considered a
qualified privilege capable of being waived, Relators have not
waived their right to stand upon the work-product privilege as to
the August 15th letter simply by producing for all the defendants
copies of Blaylock's three narrative reports, which by their
content were obviously intended for dissemination to the opposing
side and which expressly reflect the medical opinions and mental
impressions of Dr. Blaylock relevant to this case. In contrast,
the August 15th letter containing suggested deposition questions
was prepared by Blaylock at the strategic request of counsel for
counsel's own use in preparing for Neff's deposition, is therefore
clearly pure work product and does not constitute discoverable
expressions of Blaylock's expert opinions. See County of Suffolk
v. Long Island Lighting Co., 122 F.R.D. 120, 123 (E.D.N.Y. 1988). 
Nor were the questions drafted in contemplation of Blaylock's
testimony and are thus beyond the scope of proper discovery. See
Tex. R. Civ. P. 166b(2)(e)(2). In addition, materials sought
purely for purposes of impeachment or to demonstrate bias are not
discoverable. See Russell v. Young, 452 S.W.2d 434, 436-37
(Tex.1970).
The case of Barker v. Dunham, 551 S.W.2d 41 (Tex. 1977), upon
which Neff relies does not control the outcome of this action. 
Barker did not involve the question of how the work product
exemption affects discoverability of documents generated by a
testifying expert.
The propriety of mandamus to correct a trial court order
compelling discovery of privileged material information is well-settled. See West v. Solito, 563 S.W.2d 240, 243-44 (Tex. 1978);
Stewart v. McCain, 575 S.W.2d 509, 510-11 (Tex. 1978); Houdaille
Industries, Inc. v. Cunningham, 502 S.W.2d 544, 550 (Tex. 1973).
The remedy of mandamus is particularly appropriate under the
present circumstances in light of the trial court's abuse of
discretion, the inadequacy of appeal from a final judgment
(privileged material having already been disclosed), and a unique
discovery question having been presented for review. See Menton v.
Lattimore, 667 S.W.2d 335, 342 (Tex. App.-Fort Worth 1984, orig.
proceeding). 
We anticipate that Judge Bournias will, upon receipt of this
opinion, vacate his prior order compelling production of the August
15th letter and enter an order consistent with this opinion. 
Otherwise, the writ will issue. 
 
                               TERRY R. MEANS
DO NOT PUBLISH Justice



erif">          Justice Vance
Affirmed
Opinion delivered and filed September 9, 1998
Do not publish